STATE v. F. C. WATKINS.

(Filed 28 May, 1912.)

1. **Evidence—Dying Declarations—Competency.**

Evidence of dying declarations does not depend for its competency upon a declaration by the deceased, at the time, that he was dying; for it may be shown by the attending circumstances that he was in actual danger of death, which ensued, with full apprehension of his danger.

2. **Same—Circumstances.**

The defense being interposed, on a trial for murder, that the defendant shot the deceased and inflicted the wound from which he died, under an apprehension that he would be assaulted, and that he was in immediate danger, declarations of the deceased, "Why did he shoot me? I have done nothing to be shot for," are competent, when it is shown that they were made when his physician informed him that he had to be operated on, that he had but one chance in a hundred to live, and that he then, acting on his physician's advice, sent messages for the attendance of his friends, having expressed the purpose not to do so unless he would die; and that immediately he was put on the operating table, and died that night.

3. **Evidence—Dying Declarations—Weight—Questions for Jury.**

Dying declarations are not conclusive, but only to be given such weight by the jury as they think proper, and in like manner as other competent evidence.

4. **Evidence—Dying Declarations—Proximity of Death.**

When otherwise sufficient, the competency of dying declarations does not depend upon the immediate proximity of death.

5. **Evidence—Dying Declarations—Opinion—Statements of Fact—Questions for Jury.**

When there is doubt as to whether "dying declarations" were stated as a fact or the opinion of the deceased, the question should be submitted to the jury.

6. **Evidence—Dying Declarations—Statement of Fact.**

The prisoner having pleaded justification to the charge of murder, it is *Held*, in this case, that the dying declarations of the deceased, "Why did he shoot me? I have done nothing to be shot for," were statements of fact.

7. **Murder—Instructions—Verdict—Harmless Error.**

The prisoner having been acquitted of the charge of murder in the second degree, and found guilty of manslaughter: *Held*, an instruction upon the law of murder in the second degree, if erroneous, was harmless.

8. Instructions—Testimony of a Certain Witness—Phases of Evidence—Legal Principles.

Upon a trial for murder, the court instructed the jury that if they found that the prisoner's actions, etc., were such as testified to by a witness, C., and under circumstances as testified to by him, to find the prisoner guilty of murder in the second degree: *Held,* not error, in this case, as it directed the jury's attention, not to the credibility of the witness, but to a certain hypothesis or state of facts, which if established would constitute the offense, the reference to the witness being for the purpose of refreshing the jurors' memory as to the evidence.

9. Murder — Justification — Reasonable Apprehension—Surrounding Circumstances—Questions for Jury.

Upon a plea of justification upon a trial for murder, the reasonableness of the apprehension of the prisoner that he was about to lose his life or suffer great bodily harm must be passed upon by the jury in view of the evidence and attending circumstances, and not found conclusively from the prisoner's own statement concerning his apprehension thereunder. The charge in this case held correct.

10. Murder—Justification—Self-defense—Officer.

The same rules of law applicable to an individual pleading self-defense on a trial for murder govern when the same plea is interposed by an officer committing a homicide in making an arrest.

11. Jurors—Opinion Formed and Expressed—Motion for New Trial—Delay—Practice.

A motion to set aside a verdict on the ground that one of the jurors had formed or expressed his opinion, before he entered the box, that the prisoner was guilty, comes too late after verdict, when this was known to the prisoner before the argument of the case had been completed.

12. Jurors — Opinion Formed or Expressed — Verdict — Motions—Court's Discretion.

It is discretionary with the trial judge, in the absence of palpable abuse, to set aside a verdict on the ground of a juror having expressed his opinion of the prisoner's guilt before entering the jury box.

APPEAL by defendant from *Webb, J.,* at April Term, 1911, of BUNCOMBE.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*J. D. Murphy, A. T. Morrison, and Craig, Martin & Thomason for defendant.*

CLARK, C. J. The prisoner was indicted for the murder of John Hill Bunting. There was a verdict of manslaughter. The deceased, Bunting, was shot in his room at the Black Mountain Hotel by the prisoner about an hour after midnight on 6 August, 1909, and died next day in the hospital at Asheville. The prisoner was an officer and went to the room in which were Bunting and one Collins, having been sent for, upon the information that they were noisy and disorderly and disturbing the inmates of the hotel thereby. According to the evidence of the State, when the prisoner reached the room Bunting and Collins were not aggressive and offered no resistance, and the shooting under the circumstances was entirely unnecessary and could not be justified as an act of self-defense or otherwise. According to the evidence for the prisoner, who testified in his own behalf, he acted under apprehension that he would be assaulted and was in immediate danger and under reasonable apprehension thereof, though no weapons were found in the possession of either Bunting or Collins. The conflict of testimony upon this point was a matter for the jury.

The first exception is to the admission of the dying declarations of Bunting. He stated to the nurse that they "had killed him." He asked if he was in any danger of dying, and said that if he was not, he did not wish his people to know his condition. The doctor told him that he was suffering from a severe internal hemorrhage and that he did not have "more than one chance in a hundred of living"; that they would have to cut open his abdomen and were not willing to do so without his consent, and that he had better communicate with his people. Thereupon he asked Dr. Hilliard to send a telegram to them. The deceased, who had been quiet, then opened his eyes and said: "Who shot me?" Dr. Landress answered: "The officer at Black Mountain shot you"; to which the deceased replied: "Why did he shoot me? I have done nothing to be shot for."

Dr. Fletcher also testified as to the critical condition of the deceased at that moment, who knew his condition and who was about to be put upon the operating table, and who died that night. Surrounding circumstances are sufficient to show consciousness of approaching death and to lay the foundation for a dying declaration. *S. v. Bagley,* 158 N. C., 608, and *S. v. Laughter, post,* 488.

In Wigmore Ev., sec. 1442, it is said: "In ascertaining this consciousness of approaching death, recourse should naturally be had to all the attending circumstances. It has been contended that only the statements of the declarant could be considered for this purpose, or, less broadly, that the nature of the injury alone could not be sufficient, *i. e.,* in effect, that the declarant must have shown in some way, by conduct or language, that he knew he was going to die. This, however, is without good reason. We may avail ourselves of any means of inferring the existence of such knowledge; and if in a given case the nature of the wound is such that the declarant must have realized his situation, our object is sufficiently attained. . . . . No rule can here be laid down. The circumstances of each case will show whether the requisite consciousness existed; and it is poor policy to disturb the ruling of the trial judge upon the meaning of these circumstances."

The evidence in this case shows that the deceased said that he did not wish his friends to know his condition unless he was in danger of dying; the physicians told him that he must be operated on; that he had but one chance in a hundred to live; that he should communicate with his friends. He immediately sent off a message, showing his belief in what had been said to him; he was immediately lifted upon the operating table, and died that night; and, indeed, the above declaration seemed to have been the last remark that he made. It is impossible to escape the conclusion upon this evidence that the declaration was made under a sense of impending death.

The deceased had already stated that they had killed him, and he must have known, even independently of the physician's statement, from the attendant circumstances, that his condition was desperate; and when the physicians told him that he had

but one chance in a hundred to live, and he should wire his family, he understood their meaning, and at once sent the dispatch. The dying declarations of the deceased under these circumstances are taken, without the sanctity of an oath, because of necessity. Such declarations are, however, only admitted as evidence, and are not conclusive. The jury are to weigh them like any other evidence and give them such weight only as they think proper. Though it seems that those were the last words that the deceased spoke, the admissibility of such declarations does not depend upon the immediate proximity of death, for they are competent where there is the impending sense of dissolution, though death may be much longer off than in this case. In *S. v. Peace*, 46 N. C., 255, the declarations were admitted, though the deceased did not die for two days thereafter; and there have been cases where such declarations were admitted when the death occurred after a still longer lapse of time. *S. v. Mills*, 91 N. C., 581.

On the other hand, it is not necessary that the deceased should have expressly declared that he was about to die, when, as here, the attending circumstances, as for instance the remark of the physician of his desperate condition and his acting upon this suggestion to send off the dispatch, show that his critical condition was known to him.

In Greenleaf Ev., sec. 158 (16 Ed.), it is said that while it is essential that the deceased was under the sense of impending death, it is not necessary that he should so state at the time. "It is enough, if it satisfactorily appears, in any mode, that the declarations were made under that sanction; whether it be directly proved by the express language of the declarant or be inferred from his evident danger, or the opinion of the medical or other attendants, stated to him, or from his conduct or the circumstances in the case, all of which are resorted to in order to ascertain the state of the declarant's mind."

The rule for the admission of such testimony is also thus laid down in Taylor Ev., sec. 648, and approved, *S. v. Mills*, 91 N. C., 594: "(1) At the time the declarations were made, the declarant should have been in actual danger of death; (2) He should have a full apprehension of his danger, and (3) Death should have ensued."

Nor is the language used, "Why did he shoot me? I have done nothing to be shot for," incompetent as the expression of an opinion. It was the statement of a fact. If it was doubtful, which it was, it should have been admitted, and the court should have been requested to instruct the jury to consider what the deceased meant as a matter affecting the weight to be given to the statement. In *S. v. Mills,* 91 N. C., 594, the dying man stated that Eaton Mills had shot him. The witness asked, "What for?" to which the deceased replied, "Nothing." That reply is almost identical with the declaration here in evidence.

In *Darby v. State,* 79 Ga., 63, the deceased said that "the prisoner had cut him, and that he had done nothing to cause it." The Court held that this was not a conclusion, but a fact, and that the declaration was competent. In *White v. State,* 100 Ga., 650, the dying declaration that the accused "shot me for nothing, without any cause," was held not the statement of a conclusion, but rather a fact, and was competent. These two cases were cited and approved on this point in *McMillan v. State,* 128 Ga., 25.

The court charged the jury that if they found that the prisoner "went into this room that night, and that his conduct and actions were such as testified to by Collins and under the circumstances as testified by him [the court recapitulating the evidence], then the court charges you that it is your duty to find the defendant guilty of murder in the second degree." The prisoner was acquitted of murder in the second degree, and therefore this language, even if erroneous, was not prejudicial; but in *S. v. Rollins,* 113 N. C., 734, it is held that such language was not erroneous. The Court said: "The court cannot single out a witness or witnesses and charge the jury that if they believe those witnesses, to find so and so. *S. v. Rogers,* 93 N. C., 523, and cases there cited. But there is no impropriety in saying to the jury that if they believe a certain state of facts, as deposed to by certain witnesses, then the law applicable is so and so, when the court, as in this case, calls to their attention the opposite state of facts as deposed to by other witnesses, and instructs as to the law applicable thereto. This directs the jury's attention, not to the credibility of such wit-

nesses, but to a certain hypothesis or state of facts, and the reference to the witnesses is simply incidental, to refresh them as to the evidence tending to show a particular state of facts."

Exception 3 cannot be sustained, for the instruction asked was correctly given in the charge, as follows: "If the defendant reasonably believed that he was about to suffer death or serious bodily harm, and shot to protect himself, he would not be guilty, and the jury should return a verdict of not guilty; and the jury need not be satisfied of these facts beyond a reasonable doubt, or by the greater weight of the evidence, but simply satisfied. The prisoner's conduct must be judged by the facts and circumstances as they appeared to him at the time he shot, and the jury under the evidence should ascertain whether he had at the time a reasonable apprehension that he was about to lose his life or receive great bodily harm. The reasonableness of his apprehension is for the jury to pass upon, but the jury must form their conclusion from the facts and circumstances as they appeared to the prisoner at the time he shot." The able counsel for the defendant insisted that the reasonableness of the apprehension was to be judged by the prisoner himself, and not by the jury. The charge as given is strictly in accordance with the precedents and the reason of the thing. If the reasonableness of the apprehension of the prisoner must be decided by him conclusively, and not by the jury, upon consideration of the attendant circumstances, then the result depends upon his nerves or rather upon his own statement as to them, and not upon the reasonableness of the apprehension under which the prisoner took the life of a fellow being. In short, a brave man under such circumstances would be guilty and a coward justifiable. Such cannot be the law.

Exceptions 6, 7, and 8 cannot be sustained, for the court gave the instructions asked even more strongly than requested. The court repeatedly charged that if the officer acted in self-defense as testified to by himself and witnesses, he could not be convicted. The same is true as to exception 10.

Nor can exception 16 be sustained. If the prisoner fired, not in the attempt to effect an arrest, but in defense of his own person, then his conduct must be measured by the rules applica-

ble to any individual so assaulted, and the fact that he was an officer would not justify him in needlessly killing the deceased.

The other exceptions are without merit and were properly abandoned by not being brought forward in prisoner's brief. Rule 34 of this Court, 140 N. C.

The prisoner further assigned for error the action of the court in overruling a motion to set aside the verdict on the ground that one of the jurors had formed or expressed his opinion that prisoner was guilty before he entered the box, and did not let this be known when challenged. The court found as a· fact that such knowledge as the prisoner had in regard to this matter was acquired before the argument of the case was completed and before verdict, but it was not communicated to the court till after the verdict. In *Pharr v. R. R.,* 132 N. C., 418, the Court said: "Motions of this sort must be made in apt time. The knowledge of the alleged facts, upon which the defendant bases its motion, was acquired during the trial and before the verdict was rendered, and the matter should at the earliest opportunity have been brought to the attention of the court. It has been said by this Court that after a defendant has taken chances for a favorable verdict, the purposes of justice are not subserved by listening too readily to objections not taken in apt time." To a similar purport, *Baxter v. Wilson,* 95 N. C., 137; *Spicer v. Fulghum,* 67 N. C., 18; *S. v. Perkins,* 66 N. C., 128. Such matters rest in the discretion of the trial court, certainly in the absence of a palpable abuse of discretion. This was not the case here, for the testimony of the juror himself is that he not only was not prejudiced against the prisoner, but that in considering the verdict several of the jurors were in favor of a verdict for murder in the second degree, and that he on the first vote stood out for manslaughter and aided to reduce the verdict accordingly, and that none of the jurors were for acquittal at any time.

Upon careful consideration of all the exceptions we find