### STATE v. PAUL JORDAN.

(Filed 1 November, 1939.)

1. **Criminal Law § 53h—**

The charge of the court will be construed contextually as a whole.

2. **Homicide § 27f—Charge on right to kill in self-defense when defendant is assaulted on own premises held without error.**

A charge on the question of self-defense that if defendant was assaulted while on his own premises, defendant was not required to retreat to avoid a combat *held* not error for failure to add at that particular point that under such circumstances defendant would have the right to kill if necessary or apparently necessary in his self-defense, when in other portions of the charge the right to kill in self-defense is correctly set forth, since the enunciation of the principle of the right to kill in self-defense applied to the statement of defendant's right to stand his ground, and therefore the charge is without error when construed contextually as whole.

**3. Same—Instruction on defendant's right to stand his ground held sufficiently full.**

When all the evidence discloses that defendant was on his own premises at the time of the fatal encounter, an instruction that under the circumstances defendant was not required to retreat *held* not error for failing to charge on the principle of the right to stand one's ground in the face of a sudden, felonious assault affording no opportunity for retreat, since the jury was instructed that under the circumstances defendant had the right to stand his ground in the face of any kind of assault.

**4. Homicide § 18a—**

The competency of testimony of a dying declaration is a question of law for the court.

**5. Homicide § 30—**

Upon an exception to the admission of testimony of a dying declaration the ruling of the trial court will be reviewed solely to determine whether there is evidence tending to show facts necessary to support the ruling.

**6. Homicide § 18a—Competency of dying declarations.**

Dying declarations relating to the *res gestæ* are competent when, at the time, declarant is in actual danger of death, has full apprehension of such danger, and death ensues, and when declarant, if living, would be a competent witness to testify as to the matter.

**7. Same—Evidence held to show that declarant was in actual danger of death and had full apprehension of such danger.**

The evidence disclosed that at the time of making the declarations declarant was lying on an operating table with a fatal pistol wound in his abdomen, that the attending physician told him that he was in a serious condition, that he would not give "ten cents" for his life, and that declarant then made the statements. *Held:* The evidence discloses that declarant was in actual danger of death and had full apprehension of that danger sufficient to support the trial court's ruling admitting testimony of the declarations, it not being necessary that declarant himself should express his apprehension of impending dissolution, since it is sufficient that the circumstances disclose that he was fully aware of his condition.

**8. Same—**

When declarations are made under an apprehension of impending dissolution it is not necessary that death immediately ensue; in this case declarant died about three days after making the declarations, and testimony of the declarations *is held* competent.

**9. Criminal Law § 53f—Court need not charge that failure of defendant to testify should not be considered against him in absence of request.**

Defendant excepted to the charge on the ground that the court failed to instruct the jury that defendant's failure to testify in his own behalf should not be taken to his prejudice, C. S., 1799. Defendant made no request for such instructions. *Held:* Neither C. S., 564, nor precedent require the court to give such instructions in the absence of a proper request.

APPEAL by defendant from *Bobbitt, J.,* at June Term, 1939, of RANDOLPH. No error.

Criminal prosecution tried upon indictment charging the defendant with the murder of one Dave Fowler.

Verdict: Guilty of manslaughter.

Judgment: Imprisonment in the State's Prison for a term of three years.

The defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*J. V. Wilson, Moser & Miller, and C. T. Kennedy for defendant.*

SEAWELL, J.  Many exceptions appear in the record which offer no serious challenge to the correctness of the trial.  We have not thought it necessary to discuss them in this opinion.  Meriting more detailed consideration are three aspects of the trial involving exceptions on which the defense more strongly relies:

1. There was evidence on the part of the State tending to show that the defendant shot the deceased through the abdomen, without justifiable cause, and rebuttal evidence on the part of defendant tending to show that the shooting was upon defendant's own premises and in his necessary self-defense, under a reasonable apprehension of death or great bodily harm.

Among the exceptions to the instructions relating to the right of self-defense, we find the following: "Under the evidence in this case the court charges you that the defendant was on his own premises; that Dave Fowler, the deceased, also was on the premises of the defendant; that the defendant had the legal right to require Dave Fowler to leave his premises and to use such force as was reasonably necessary to compel him to leave, and that, if Dave Fowler, the deceased, made an assault upon the defendant upon his own premises, the defendant would be under no duty to retreat to avoid a combat, but was legally entitled to stand his ground."  Exception to this is upon the ground that it did not contain the further instruction that under such circumstances the person assailed would have the right to kill his adversary without retreating.

Where the subject of complaint is the omission, within the immediate focus of the objection, of something deemed essential, we are mindful of the fact that all the law cannot be crowded into a single sentence without danger to that vehicle of thought, and, so, we look further into the caravan for the missing item.  In other words, on a test of its adequacy the charge must be taken as a whole, contextually.  *Collins v. Electric Co.,* 204 N. C., 320, 168 S. E., 500; *In re Will of Brown,* 203 N. C., 347, 166 S. E., 72; *Marriner v. Mizzelle,* 207 N. C., 34, 175 S. E., 711;

*Beal v. Coal Co.,* 186 N. C., 754, 120 S. E., 333. In this instance we find no trouble with the charge after the exceptive brackets have been removed.

In the paragraph immediately preceding, we find: "A person has a legal right to use any means at his command when acting in self-defense. He may injure, even kill, a person who wrongfully assaults him whenever it is necessary for him to do so in order to defend and protect himself from death or great bodily harm. He may also do so when it is not actually necessary if he believes it to be necessary and has reasonable grounds for that belief."

The right to kill an assailant, in apparently necessary self-defense, under a reasonable apprehension of death or great bodily harm, is not peculiar to the circumstance that the person so situated happens to be upon his own premises and, therefore, need not retreat, nor is it peculiar to the situation where one is suddenly subjected to a felonious assault, which gives him no opportunity of retreat, and is sufficiently stated in the formula generally covering the right of self-defense, as contained in the charge considered as a whole.

Since there was no dispute about the fact that the defendant was at the time of the alleged assault and the killing upon his own premises, and under that score got the benefit of the charge that he need not retreat under any kind of an assault, it would seem to be supererogation to add to it that he would have the same right under a sudden felonious assault.

We have examined the other exceptive assignments of error pertaining to the subject of self-defense in connection with the whole evidence and find no error upon this phase of the case.

2. Defendant's counsel objected on the trial to the introduction of the statements made by Dave Fowler, after receiving the fatal wound, as dying declarations. The objection is based upon the alleged insufficiency of the evidence to show that at the time the declaration was made the deceased was under sufficient apprehension of death.

The evidence pertinent to this inquiry is substantially as follows:

J. B. Coltrane testified for the State: "I am a police officer in the city of High Point. This service station and dance hall is around eight or nine miles from High Point. On the night of the 19th of September I saw the deceased, Dave Fowler, at the Guilford General Hospital, High Point. That was at eleven o'clock. He was on the operating table. Mr. Lee and Dr. Slate, Dr. Stanton and two or three nurses were present with me. When we answered the call by the time we got to the hospital they had already strapped Dave down to his knees. His shirt was pulled up here and there was a wound approximately two inches to the left of his navel and maybe a quarter of an inch below. It was

a bullet wound.  I didn't see any other wound on him at that time.  He was conscious then.  I had known the deceased a couple of years.  At this time, while the deceased was on the operating table, I heard Dr. Slate make a statement in the presence and hearing and to Dave Fowler. Dr. Slate is a practitioner of medicine.

"I asked Dr. Slate if the deceased was conscious at the time and if we might say something to him, and he said he was conscious.  He said he wouldn't give ten cents for his life.  He said he didn't think he would recover under any circumstances; and.then he reached over and laid his hand on his, the deceased's abdomen, and said, 'Dave, you are in a bad way, go ahead and tell these officers anything that you want to; if you want to make a statement to them go ahead and make a statement.'

"When the doctor made that statement to him in our presence he said that he would make a statement; that he didn't have any prejudice against anyone.  He said that Paul Jordan shot him and he shot him in his service station; that he was fixing to leave, was coming out the door, coming through the door; and Paul came around the counter and fired, just fired pointblank at him and hit him.  Said that is all there was to it.  Said he didn't know any reason in the world why he should have shot him.

"There were two doctors in the room when I went to the hospital. Dr. Slate was standing right by the table and Dr. Stanton was preparing himself for the operation.  There were two or three nurses there, and the other officer."

D. S. Lee testified for the State: "I am an officer at High Point.  I was present on the night at the hospital with Mr. Coltrane.  I was in the operating room at the time the deceased was there.  Dr. Slate and Dr. Stanton and two or three nurses were going in and out.  The deceased, Dave Fowler, was alive at that time.  He was conscious.

"Dr. Slate was standing by the operating table and he laid his hand over on Dave and said, 'Dave, if you want to make any statement to these officers, go ahead and make it; I wouldn't give ten cents for your life.'

"He said he and Mr. Loman, Mr. Simpson, Pauline Pierce and Jewel Phillips were down at the station and they had started to leave and he had started out the door when Mr. Jordan fired pointblank at him and hit him in the.stomach.

"I went to the hospital at 11 p.m.  We went out to investigate the case.  We had been called there by the doctor.  Dr. Slate and Dr. Stanton and two or three nurses were there."

Dr. T. M. Stanton testified for the State: "I am a practitioner of medicine.

"I am now connected with the Guilford General Hospital and was on the 19th of September, last year. This hospital is in High Point. I saw the body of Dave Fowler in the hospital on the 19th of September. It must have been between 10 and 11 o'clock. I examined the deceased. I found that Dave Fowler had a bullet wound on the left front of his abdomen about half way between his hip bone and his ribs. After I opened him up to find out the extent of the injury, it damaged four or five feet of the small intestines. I treated him. He remained in the hospital for several days. He died there. His death was caused as a result of this bullet tearing his bowels and he developed peritonitis. Dr. Slate was there with me on the night the deceased, Dave Fowler, was on the operating table. At that time he was in right much shock.

"I told him that he was severely wounded and in all probability wouldn't get well, and if he had any statement to make I advised him to make it.

"He said he was standing in the door of Mr. Jordan's filling station fixing to leave and Mr. Jordan shot him.

"That was the night of the injury, and he lived several days after that. He got along very well for several days, about three days, and knew about everything that was going on, then he died."

The reasons usually advanced in support of the universal practice of admitting dying declarations in evidence on homicide trials is part of the conventional learning of the profession. We do not care to make an unnecessary display of erudition. On that subject a collection of authorities may be found in *S. v. Stewart,* 210 N. C., 362, 186 S. E., 488, and to these we refer. A study of these authorities convinces us that the public policy that has been strong enough to strike down the rule against the admission of hearsay evidence, to the extent that dying declarations, unsworn and untested by cross-examination, are admitted in evidence, is justified by its agreement with our common experience of the truthfulness of such declarations, and still more so, perhaps, by the necessity of preserving the evidence of one of the principals in a tragedy, in which he is often the only eye-witness of his own murder. Since such evidence is already confined to the act of killing and attendant circumstances— the *res gestæ*—public policy should not be further narrowed by limitations not within its spirit, to the extent that such an important instrument of proof should be impaired or destroyed.

The admissibility of evidence of this kind is addressed to the court and not the jury. And, on appeal, the action of the court below will be reviewed only to determine whether there was evidence tending to show the facts necessary to the decision. *S. v. Stewart, supra.*

The conditions under which such evidence may be admitted have been variously stated, but the summary, by *Adams, J.,* in *S. v. Collins,* 189

N. C., 15, 126 S. E., 98, is sufficiently clear: "The rule for the admission of dying declarations is thus stated: (1) At the time they were made the declarant should have been in actual danger of death; (2) he should have had full apprehension of his danger; (3) death should have ensued. *S. v. Mills,* 91 N. C., 581, 594." For the sake of completeness, although not important in the case at bar, we might add to this a fourth condition that the declarant, if living, would have been a competent witness to testify as to the matter. *S. v. Beal,* 199 N. C., 278, 297, 154 S. E., 604.

We have to consider here whether the evidence in this case is sufficient to sustain the decision of the court below to admit the evidence under the two conditions first named above, that is, that the declarant was in actual danger of death and that he had a full apprehension of such danger. Under the evidence in this case, we should consider it a waste of time to debate the question whether a man shot through the abdomen, with his bowels torn—four or five feet of his intestines damaged—was in danger of death. The objection raises the question whether the evidence is sufficient to show that the wounded man was aware of that danger and had that apprehension of his dissolution which would qualify his statement as a dying declaration. At the time he was upon the operating table, surrounded by nurses and doctors, and one of the latter had just told him that he would not give ten cents for his life. *S. v. Watkins,* 159 N. C., 480, 75 S. E., 22. These are circumstances from which it may be reasonably inferred that he was fully aware of his condition and was under a sense of impending death. It was not necessary that the declarant should express any opinion about the matter. *S. v. Beal, supra; Benton v. State,* 158 Ga., 41, 122 S. E., 775; *Phillips v. State,* 163 Ga., 12, 135 S. E., 421; *Washington v. State,* 137 Ga., 218, 73 S. E., 512; *S. v. Franklin,* 192 N. C., 723, 135 S. E., 859; *Hill v. Commonwealth,* 43 Va., 594; *Jones v. State,* 130 Ga., 274, 60 S. E., 840.

Obviously, the court, on appeal, cannot undertake to measure the degree of apprehension or the depth of the solemnity into which the declarant has been submerged and thus create an absolute standard for the introduction of such evidence. The court acquires many headaches in attempting to create hard and fast rules applicable to all circumstances, to draw lines impossible of fixation, where the matter should be left within the sound discretion of the lower court. In this connection we can find almost as many expressions of opinion as there are cases; but in most instances they are general expressions addressed to the philosophy back of the admission of such evidence, rather than intending to fix the exact degree of apprehension, only to emphasize the point that the declaration must be solemnized by a full sense of approaching dissolution.

In *S. v. Moody,* 3 N. C., 31, 2 Am. Dec., 616, it is said the declarations must be that of a dying man "or one so near his end that no hope of life remains." In *S. v. Baldwin,* 155 N. C., 494, 71 S. E., 212, it is simply stated that such declarations to be admitted must be "made in the expectancy and contemplation of impending death." In *S. v. Beal, supra,* it is said that the declarant must be so near death as to "lose use of all deceit." In *S. v. Wallace,* 203 N. C., 284, 165 S. E., 716, the condition of admission is said to be that the declarant must be "in actual danger of death, and must have full apprehension of his danger." *S. v. Mills,* 91 N. C., 589. "These declarations are received on the general principle that they are made in extremity—'when,' as said by *Eyre, C. B.,* 'the party is at the point of death, and when every hope of this world is gone; when every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth. A situation so solemn, and so awful, is considered by the law as creating an obligation equal to that which is imposed by a positive oath administered in a court of justice.' " See *Rex v. Woodcock,* 168 Eng. Reports, 352. In *S. v. Bagley,* 158 N. C., 608, 73 S. E., 995, the declaration was admitted when the deceased "fully realized not only that his death was sure, but that it was also near," citing *S. v. Quick,* 150 N. C., 820; Wigmore on Evidence, sec. 1430 *et seq.*

We think it may be assumed from the divergent expressions in these authorities that the court was not intending to state in each instance the minimum standard. That some latitude must be given to the trial court in this matter is a necessity of administration and is consonant with the rule applied here, in review, in *S. v. Beal, supra,* and *S. v. Stewart, supra,* that is, that we must confine that review to a consideration whether the evidence discloses facts sufficient to sustain the decision of the court below.

As to the time elapsing between the declaration and the death as affecting the admissibility of the declaration, it is said in *S. v. Watkins,* 159 N. C., 480, 75 S. E., 22, that to be admissible the dying declarations need not be made in immediate proximity of death, where there is an impending sense of dissolution.

In *S. v. Poll,* 8 N. C., 442, 9 Am. Dec., 655, the declaration of a sick person that he had been poisoned by certain individuals and despaired of recovery was admitted, although death did not immediately follow.

In *S. v. Craine,* 120 N. C., 601, 27 S. E., 72, the Court held that declarations made in expectation of impending death are not rendered inadmissible by the fact that deceased lived for five months after making them.

In *S. v. Hall,* 134 S. C., 361, 133 S. E., 24, a dying declaration of deceased, made shortly after the injury and under apprehension of death, was admitted, although death did not occur until thirty-three days later.

In *S. v. Stewart, supra,* some importance seems to be attached to the fact that the declarant did not die until 13 days after she made the statement. The reasoning of the Court upon that point may be found on page 370. This case can be reconciled with precedent only upon the theory that this suggestion is confined to the question of present actual danger.

Upon the whole of the matter, we think that the summary of the Court, *per Adams, J.,* laid down in *S. v. Collins, supra,* is a sufficient statement of the rule.

Examining this evidence, we do not find it necessary to weigh the principles discussed with the greatest nicety, since we think the court might well have inferred that the declarant had a reasonable apprehension of impending death, especially in view of the fact that the attending surgeon told him that he would not give ten cents for his life.

3. We encounter more difficulty when we come to consider the third proposition, which we have undertaken to discuss.

The defendant did not go upon the stand in his own behalf and the trial judge did not instruct the jury that his failure to testify in his own behalf should not be taken to his prejudice. C. S., 1799. There was no special request for such an instruction, but the defendant contends it should have been given by the judge, under the requirements of C. S., 564, without such request, and that the failure *so to do* constitutes reversible error.

In removing the disqualification of a person charged with crime to testify in his own behalf, the Legislature made the provision that his failure to do so should not be taken to his prejudice. The North Carolina law, along with those of a few other states, still retains this provision.

Many students of criminal judicial investigation, and the administration of criminal law, consider this provision as ill-conceived and obstructive to justice. The American Bar Association has recommended its removal from criminal procedure, and this has been followed by our own Bar Association, recommending its repeal. Bills looking to that end have been presented to the Legislature, but apparently have never gone beyond the judiciary committees.

The relation of the statute to the presumption of innocence accorded to one or trial for crime is discussed in *S. v. McLeod,* 198 N. C., 649, 653, 152 S. E., 895; *S. v. Spivey,* 198 N. C., 655, 658, 153 S. E., 255; *S. v. Tucker,* 190 N. C., 708, 130 S. E., 720. The question whether a full charge as to the presumption of innocence, and the necessity that the State should prove the guilt of the defendant beyond reasonable doubt before conviction, may not sufficiently cover the substance of the desired instruction, is not determined.

Defense counsel cite *S. v. Bynum,* 175 N. C., 777, 95 S. E., 101, and *S. v. Hardy,* 189 N. C., 799, 128 S. E., 152, as authority for the position that the judge must charge upon this point, in the absence of special request, under C. S., 564, requiring that the judge shall state the evidence plainly and explain the law arising thereon.

As to *S. v. Bynum, supra,* the suggestion that such an instruction was incumbent on the trial judge is a mere inference as to an attitude of mind, and did not amount even to a *dictum.* However, in *S. v. Hardy, supra,* after setting out a number of constitutional and statutory provisions protecting a defendant accused and on trial for a criminal offense, in which C. S., 1799, was listed, the Court, *per Justice Connor,* in the last paragraph of the opinion, made the expression which the defendant calls to his aid: "The charge to the jury in this case contains neither a 'statement in a plain and correct manner of the evidence,' nor 'an explanation of the law arising thereon.' C. S., 564. There were no requests for special instruction; counsel, however, were justified in assuming that the jury would be instructed as to the presumption of innocence of defendant; the rule as to burden of proof applicable; the tests to be applied in order to determine the credibility of the testimony of the State's witness, who, if believed by the jury, was an accomplice; the lack of presumption against defendant arising from his failure to exercise his right to testify in his own behalf, and that finally they were to pass upon and determine both the credibility of the testimony of the witnesses and the weight of the evidence."

An examination of the numerous propositions as to which the trial judge must give instruction, without special request, shows that the duty to so instruct has arisen in two ways: First, through the operation of C. S., 564, requiring a statement of the evidence and the application of the law thereto; and, second, through precedent establishing the duty because of its substantial importance to the rights of the defendant on trial. As to the proposition last stated, we find no precedent other than *S. v. Hardy, supra,* if it be a precedent; as to the first—and the defendant claims under the statute—it is difficult to see how the duty of such an instruction can be brought within the requirements of a statute which simply says that the trial judge "shall state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon." A reference to the record and the briefs in the *Hardy case, supra,* discloses that the omission to instruct the jury that the failure of defendant to go upon the stand was not to be taken to his prejudice is not brought up by the two exceptions taken to the judge's charge, nor was it adverted to in the briefs, and it was not, therefore, before the Court. It may be treated as *obiter dictum.* Treating the question raised,

therefore, as a matter of first impression, it is debatable whether the judge does not do the defendant a disfavor by emphasizing the failure of the defendant to go upon the stand and, thereby, deepening an impression which is perhaps hardly ever removed by an instruction which requires a sort of mechanical control of thinking in the face of a strong natural inference. *S. v. Bynum, supra; S. v. Spivey, supra.*

Upon these considerations, we.think the matter had best be left to the sound judgment of the defending attorney whether he shall forego the instruction or specially ask for it.

On the trial of the case, we find

No error.