STATE OF NORTH CAROLINA v. LEVON BRYANT

No. 47

(Filed 11 April 1973)

1. **Criminal Law § 21— preliminary hearing — probable cause of second degree murder — trial thereafter for first degree murder**

    A finding of probable cause of second degree murder only by a district judge sitting as a committing magistrate did not amount to a dismissal of the first degree murder charge contained in the warrant or limit the State to second degree murder as the maximum charge for which defendant could be tried, and defendant was properly tried for first degree murder upon an indictment thereafter returned by the grand jury.

2. **Criminal Law §§ 73, 77— conversation with defendant — hearsay rule — competency to show motive**

    In this first degree murder case, testimony by a witness that he asked defendant about a rumor that deceased had been going with defendant's wife and that defendant replied that it wasn't that but that "it was about some money and other things" was not hearsay and was properly admitted to show defendant's state of mind and his motive.

3. **Criminal Law § 112— instructions on reasonable doubt — possibility of innocence**

    In a first degree murder prosecution, the trial judge's definition of reasonable doubt as a "possibility of innocence" was more favorable to defendant than was required and therefore did not constitute prejudicial error.

4. **Criminal Law § 116— charge on defendant's failure to testify — no prejudice**

    Although it is the better practice to give no instruction concerning the failure of defendant to testify unless he requests it, the trial court's instruction in this first degree murder case to the effect that defendant's failure to testify should not be considered by the jury was not prejudicial to defendant.

DEFENDANT appeals from judgment of *Webb, J.,* 23 October 1972 Criminal Session, LENOIR Superior Court.

Defendant was charged in a warrant with the first degree murder of Charles Graham on 30 September 1972. A preliminary hearing was conducted before a district judge on 12 October 1972. The district judge, sitting as a committing magistrate, found probable cause of murder in the second degree and bound defendant over to the next term of superior court for trial with appearance bond fixed at $10,000.

State v. Bryant

At the 23 October 1972 Session the Grand Jury of Lenoir County returned a true bill of indictment charging defendant with murder in the first degree. Before pleading to the bill of indictment, defendant moved that the State be limited to murder in the second degree as the maximum charge against him. The motion was denied, defendant entered a plea of not guilty and was placed on trial for first degree murder.

The State's evidence—defendant offered none—tends to show that on and prior to 30 September 1972 the defendant, the deceased Charles Graham, and Freddie Marshall were operating a poker game in the back room of Charles Graham's shoeshine parlor in the 400 block of East Bright Street in Kinston. The cut from the poker game was to be split among the three, share and share alike.

About 8:30 p.m. on 30 September 1972 while Freddie Marshall was talking to Charles Graham in the front area of the shoeshine parlor, defendant called Marshall outside and told him to get out of the place. He asserted that Charles Graham owed him eleven dollars and had told him he would pay him Monday, but that he wanted the money now. The eleven dollars represented defendant's cut from the poker game the preceding night. Freddie Marshall offered to pay the debt but defendant declined the money saying he wanted to get it from Charles Graham. Defendant then went toward his car and returned with a .22 rifle in his hand. Charles Graham was sitting in the shoeshine stand on the inside of the building. Defendant ran up to the front of the building, fired through the window, then moved toward the door and fired two more shots toward the shoeshine stand. The deceased was found lying facedown in front of the shoeshine stand with blood under his head. Three spent .22 shells were found in front of the shoeshine parlor, and there was a bullet hole in the middle windowpane. "There is approximately eight inches to a foot from the windowpane to the chair. The bullet hole is approximately two inches above the chair arms." The deceased had three wounds—two on the head, one nicking the lower portion of the ear and entering the left mastoid process and the other above the right eye. The third wound was in the left front flank along the belt line area. Death resulted from the gunshot wounds in the head.

Prior to the shooting defendant expressed ill will toward the deceased for not paying defendant his cut from the poker

game; and the morning after the shooting defendant stated the reason he shot Charles Graham was "money and some other things."

The jury returned a verdict of guilty of murder in the first degree, and defendant was sentenced to prison for the remainder of his natural life. From the judgment imposed defendant appealed to the Supreme Court assigning errors discussed in the opinion.

*Gerrans & Spence by C. E. Gerrans for defendant appellant.*

*Robert Morgan, Attorney General; William W. Melvin and William B. Ray, Assistant Attorneys General, for the State of North Carolina.*

HUSKINS, Justice.

[1]  For his first assignment of error defendant says the court erred in denying his motion to quash the first degree murder charge. He argues that the action of the committing magistrate, who found "probable cause" of second degree murder only, amounted to a dismissal of the first degree murder charge and limited the State to second degree murder as the maximum charge for which defendant could be tried.

A district judge sitting as a committing magistrate in a preliminary hearing has no authority *to dismiss* a first degree murder charge. G.S. 7A-272(b) confers jurisdiction on the judges of the district court "to conduct preliminary examinations and to bind the accused over for trial . . . upon a finding of probable cause, making appropriate orders as to bail or commitment." When performing these duties in felony cases, the district judge sits only as an examining magistrate. The trial and dismissal of felonies is beyond the jurisdiction of the district court.

"In North Carolina, a preliminary hearing is simply an inquiry into whether the accused should be discharged or whether, on the other hand, there is probable cause to submit the State's evidence to the grand jury and seek a bill of indictment to the end that the accused may be placed upon trial. . . . [A]nd a discharge of the accused is not an acquittal and does not bar a later indictment." *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296 (1972).

Chief Justice Bobbitt in *State v. Foster,* 282 N.C. 189, 192 S.E. 2d 320 (1972), said: "Neither the North Carolina nor the United States Constitution requires a preliminary hearing. A preliminary hearing is not a necessary step in the prosecution of a person accused of crime, and an accused person is not entitled to a preliminary hearing as a matter of substantive right." It has been repeatedly held that a preliminary hearing is not an essential prerequisite to the finding of a bill of indictment and that it is proper to try the accused upon a bill of indictment without a preliminary hearing. *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44 (1967); *State v. Hargett,* 255 N.C. 412, 121 S.E. 2d 589 (1961); *State v. Hackney,* 240 N.C. 230, 81 S.E. 2d 778 (1954); 21 Am. Jur. 2d *Criminal Law* § 442 (1965).

It necessarily follows that an accused may be tried upon a bill of indictment which charges a felony different from the crime for which he was bound over. "Manifestly, when a prosecuting officer is satisfied that a higher grade of offense than that returned by the committing magistrate has been committed, he may draw the bill accordingly." *State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972). To hold otherwise would constitute a committing magistrate the most powerful judicial officer in the State, endowed with infallibility and immune to appellate review. *Price v. Georgia,* 398 U.S. 323, 26 L.Ed. 2d 300, 90 S.Ct. 1757 (1970), cited and relied on by defendant, is not in point. This assignment has no merit and is overruled.

**[2]** A State's witness, Willie James Gardner, testified that he visited defendant in jail, asked him why he killed the deceased, and defendant "just shook his head." Then, over objection, the witness was permitted to testify that he told defendant: "Well, I heard a rumor that Charles [the deceased] was going with your wife. Is that true?" The witness continued: "And he said no; that it won't that. He said it was about some money and some other things. . . . " Defendant contends that the quoted testimony "amounted to nothing more than hearsay and should have been stricken." This constitutes defendant's second assignment of error.

The hearsay rule has often been stated as follows: "Evidence, oral or written, is called hearsay when its probative force depends in whole or in part upon the competency and credibility of some person other than the witness by whom it is sought to produce it." *King v. Bynum,* 137 N.C. 491, 49 S.E. 955 (1905); *Chandler v. Jones,* 173 N.C. 427, 92 S.E. 145 (1917).

State v. Bryant

"Expressed differently, whenever the assertion of any person, other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted, the evidence so offered is hearsay. If offered for any other purpose, it is not hearsay." Stansbury, N. C. Evidence § 138 (Brandis Rev. 1973).

Here, the testimony of Willie James Gardner concerning his conversation with defendant was not offered to prove the truth of rumors that the deceased was going with the defendant's wife. Its probative force did not depend on the competency and credibility of some person other than Willie James Gardner. Accordingly, the evidence was not hearsay and the hearsay rule is inapplicable. *State v. Miller*, 282 N.C. 633, 194 S.E. 2d 353 (1973). The evidence was relevant to defendant's state of mind and tended to show motive, and was properly admitted. *State v. Robbins*, 275 N.C. 537, 169 S.E. 2d 858 (1969). This assignment is overruled.

[3] Defendant next contends that the trial judge improperly defined "reasonable doubt" as "a possibility of innocence." The portion of the charge assigned as error is almost verbatim the charge quoted and discussed in *State v. Bryant*, 282 N.C. 92, 191 S.E. 2d 745 (1972), where this Court, while not approving the innovative portion of the charge, said: "We are of the opinion that the portion of the charge to which defendants here except places a greater burden on the State than the approved usage of such terms as 'fully satisfied,' 'entirely convinced,' or 'satisfied to a moral certainty.' This portion of the charge is more favorable to defendants than that to which they are entitled. They therefore fail to show error prejudicial to them." *Accord, State v. Wright*, 282 N.C. 364, 192 S.E. 2d 818 (1972). Prejudicial error is not shown here; hence, there is no merit in this assignment.

[4] Finally, defendant assigns as error the following portion of the charge:

"Now ladies and gentlemen, I do want to charge you that in this case the defendant did not testify. Now, one of the most precious rights that we have under the United States Constitution and under the common law of North Carolina, without regard to the U. S. Constitution is that no person is required to testify against himself in a criminal case, and the only way that this right can be fully protected is that when a person accused of a crime does not

testify, that the jury must not consider his failure to testify one way or the other in reaching a decision in the case; so don't consider in your deliberations the fact that the defendant did not testify in this case."

We must decide whether the court committed prejudicial error by charging the jury in this fashion, no request for such charge having been made by defendant.

G.S. 8-54 in relevant part reads as follows:

"In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses or misdemeanors, the person so charged is, at his own request, but not otherwise, a competent witness, *and his failure to make such request shall not create any presumption against him.*" (Emphasis ours.)

Under the foregoing statute the judge is not required to instruct the jury that a defendant's failure to testify creates no presumption against him *unless defendant so requests. State v. Rainey,* 236 N.C. 738, 74 S.E. 2d 39 (1953); *State v. Kelly,* 216 N.C. 627, 6 S.E. 2d 533 (1940); *State v. Jordan,* 216 N.C. 356, 5 S.E. 2d 156 (1939); 3 Strong N. C. Index 2d, *Criminal Law* § 116. Chief Justice Bobbitt, speaking for the Court in *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115 (1971), said: "Defendant assigns as error the court's instructions to the effect that defendant's failure to testify was not to be considered against him. Although the instruction is meager and is not commended, we are constrained to hold that it meets minimum requirements. Ordinarily, it would seem better to give no instruction concerning a defendant's failure to testify unless such an instruction is requested by defendant." It is noted that the defendant Barbour made no request for such an instruction.

In *State v. Rankin,* 282 N.C. 572, 193 S.E. 2d 740 (1973), a case in which defendant did not request an instruction concerning his failure to testify but insisted the court erred in failing to give same, we said: "Since defendant did not request the instruction he now insists the court should have given, the trial court properly omitted any mention of it."

In *State v. Horne,* 209 N.C. 725, 184 S.E. 470 (1936), the trial judge, without any request, instructed the jury with respect to defendant's failure to testify, saying defendant had a right to sit mute and say nothing and it should not be consid-

ered against him. The Court said: "We find no error in this instruction of which the defendant can complain."

In *State v. McNeill*, 229 N.C. 377, 49 S.E. 2d 733 (1948), the trial judge, without request, called the jury's attention to the fact that the defendant offered no evidence and did not testify in his own behalf and instructed the jury that defendant had the right to elect whether he would testify or not and his failure to do so "shall not be considered against him prejudicially by the jury." Since a new trial was awarded on other grounds, the Court commented on this part of the charge as follows: " . . . [W]e wish to call attention to the fact that the failure of a defendant to go upon the witness stand and testify in his own behalf should not be made the subject of comment, except to inform the jury that a defendant may or may not testify in his own behalf as he may see fit, and his failure to testify 'shall not create any presumption against him.' G.S. 8-54."

Some jurisdictions hold that unless the defendant so requests, such an instruction tends to accentuate the significance of his silence and thus impinges upon defendant's unfettered right to testify or not to testify at his option. *See* Annot., 18 A.L.R. 3d 1335.

In *Griffin v. California*, 380 U.S. 609, 14 L.Ed. 2d 106, 85 S.Ct. 1229 (1965), the failure of the accused to testify was commented upon by the prosecuting attorney and, in its instructions, by the court. Both the prosecutor and the court acted under Article I, section 13, of the California Constitution which provides that " . . . in any criminal case, whether the defendant testifies or not, his failure to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury." The Supreme Court of the United States held that the California comment rule violates the self-incrimination clause of the Fifth Amendment. The Court said: "What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." It should be noted that in *Griffin* the trial judge instructed the jury, in effect, that defendant's silence is evidence of guilt, a permissible instruction under the California comment rule.

Here, under our law, the trial judge specifically instructed the jury to the contrary. While we do not approve the language

chosen, and reemphasize that it is better to give *no instruction* concerning failure of defendant to testify unless he requests. it, *State v. Barbour, supra,* we hold that the instruction given was not prejudicial. Even if it be conceded *arguendo* that the charge was technically erroneous, in our opinion it was ' harmless error beyond a reasonable doubt. *Chapman v. California,* 386. U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824. (1967) ; *Harrington v. California,* 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726 (1969) ; *State v. Fletcher and Arnold,* 279 N.C. 85, 181 S.E. 2d 405. (1971). A different result would not have ensued had the portion of the charge complained of been omitted. Therefore, the charge was not prejudicial, and this assignment of error is overruled.

Defendant having failed to show prejudicial error the verdict and judgment must be upheld.

No error.