STATE v. ANTON PROCTOR, FRITZ BRINKLEY, FRANK FAULK, AND WALTER "DOODLE" WELLS.

(Filed 23 March, 1938.)

1. **Criminal Law § 79—**

    Exceptions not set out and discussed in appellant's brief will be deemed abandoned. Rule of Practice in Supreme Court, No. 28.

2. **Criminal Law § 41f—**

    When defendant does not go upon the stand, N. C. Code, 1799, and does not offer evidence of good character, his character is not in issue and it may not be impeached by the State.

3. **Same: Criminal Law § 53f—Instruction on State's contention that defendant associated with codefendants held not error in absence of objection by defendant.**

    The appealing defendant did not go upon the stand or put his character in issue in this prosecution for assault and robbery with firearms, N. C. Code, 4267 (a), and for conspiracy to commit the offense. The codefendants testified that the appealing defendant was with them and aided in the commission of the crime, and testified as to their convictions and sentences for former crimes. *Held:* An instruction that the State contended that the codefendants were men of bad character to appealing defendant's knowledge and that he associated with them *is held* not error in the absence of a request by defendant for a correction of the statement of the contention, the contention being permissible as relating to identity rather than character, and the court having fully and correctly instructed the jury that appealing defendant's failure to go upon the stand should not be considered against him, and the fact that appealing defendant knew his codefendants, and was with them immediately prior to the robbery being competent as some evidence that he was with them at the time of the robbery and as corroborative of their testimony.

**4. Criminal Law § 53f—**

    A misstatement of the contentions of a party must be brought to the court's attention in apt time to afford opportunity for correction in order to be considered on appeal.

APPEAL by Walter "Doodle" Wells from *Burgwyn, Special Judge,* at October Term, 1937, of HALIFAX. No error.

The bills of indictment against the defendants charged them (1) assault and robbery with firearms [N. C. Code, 1935 (Michie), sec. 4267(a)], and (2) conspiring together to commit an assault and robbery with firearms. The defendants Anton Proctor and Fritz Brinkley pleaded guilty to the charges and were duly sentenced. Frank Faulk and Walter "Doodle" Wells pleaded not guilty. The court, at the conclusion of the State's evidence, ordered a verdict of not guilty as to Frank Faulk. The jury convicted Wells, who was duly sentenced. The defendant Wells excepted, assigned errors, and appealed to the Supreme Court. The necessary facts will be set forth in the opinion.

*Attorney-General Seawell and Assistant Attorneys-General McMullan and Willis for the State.*
*Allsbrook & Benton for defendant.*

CLARKSON, J. Rules of Practice in the Supreme Court, 200 N. C., 831. Rule 28. *Appellant's Brief,* in part: "Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him."

In defendant's brief there is only one exception and assignment of error, which is to the charge of the court below, which we think cannot be sustained, viz.: "The State contends that you ought to be convinced of the defendant's guilt beyond a reasonable doubt. The State contends that while the accomplices, Brinkley and Proctor, are men who have engaged in the bad things of life; that Brinkley is a bad man and has been to the penitentiary on more than one occasion, and that Proctor, while a young man, has also been engaged in things which he should not have done, and that he served sentences either on the roads or in jail, but the State contends Walter Wells is a man of similar character. The State contends that Wells associated with these men and well knew the men; that he lived in the same community with them, knows their reputation and knows they have been to the penitentiary and to the roads, if they have, and knows for what they were sent, and the State contends he would not associate and be riding around, if you find beyond a reasonable doubt he was associating and riding around with them, unless they were of similar character, and the State contends 'birds of a feather flock

together' applies in this case. That while up to this time Wells may have escaped punishment for anything he may have done or been connected with, the State contends on this occasion he was with these men."

Fritz Brinkley, who entered a plea of guilty, testified in part that he had known Wells some 18 years. They were both reared in and near Rocky Mount, N. C. "Anton Proctor and 'Doodle' Wells were with me the night I held up the Texaco Filling Station at Enfield and robbed Jack Hearne. 'Doodle' Wells drove the automobile. At the time Anton Proctor and I were in the filling station Wells was sitting under the wheel of the automobile. The automobile was a Ford, 1936 black coach. . . . We were drinking. When we left Rocky Mount we went out the Battleboro Highway toward Enfield. I think Enfield is 19 or 20 miles from Rocky Mount. When we saw this filling station open at that time of morning is when Wells, Proctor, and I made the agreement to hold up the filling station. We made the agreement as we were passing by the filling station. We rode on about a mile or a mile and a half and then turned and came back to the filling station. At the time Walter Wells and Anton Proctor each had guns in the car. Walter Wells drove the car right to the front door as you go into the filling station. I got out, went into the filling station and called for a coca-cola, and as soon as he reached for the coca-cola and before he handed it to me he was in the back of the filling station, and I drew the gun on him and said, 'Stick 'em up.' I had the gun with me that I got off of Walter Wells when I left the car. After I put the gun on the man in the filling station Anton Proctor is the one that carried out the cash register and shotgun. They are all I know that he carried out. He put them in the back of the black Ford. . . . When I got back in the car Walter Wells was under the steering wheel, Anton Proctor was in the back seat, the cash register and gun were in the back seat. After we got in the car we did not stay any longer than it took us to get away. On the way back to Rocky Mount from Enfield we stopped near the train station at Battleboro on the highway and split what was in the cash register. . . . Proctor got out of the car, and they put me out about 5½ miles from Rocky Mount, and 'Doodle' Wells left in the car. The last time I saw the car 'Doodle' Wells was driving it and going toward Rocky Mount. Proctor and I stayed there until daybreak and then went back to town. That is all I know about it."

Brinkley was corroborated by Anton Proctor. Corroborative evidence was given also by K. M. Sutton, E. M. Tilghman and others.

Fritz Brinkley testified as to his criminal record: "I got out of the penitentiary on 5 March, 1937, and came to Rocky Mount. I began working as an automobile mechanic in the same building where Walter Wells was, but was not employed by him. It is true that I borrowed

Walter Wells' automobile a few days after I came from the penitentiary to carry a girl to ride, and turned the car over and damaged it to the amount of $40.00 or $50.00, and paid for the damages to the car. I am the man who paid for the damages to the car, and my relations with Walter Wells have not been strained ever since. . . . I have been convicted of criminal offenses three times. . . . In the preliminary hearing I said I had been in trouble ever since I was 16 years old, but not in the juvenile court. I was sent to the roads at 16. I stated at that hearing I had not been off the roads or out of the penitentiary but very few days since I was 16 years old. I am now 31. I got 16 months one time, four months the second time, three to five years on one charge, and two to four years on the other. I pulled five to seven years in the penitentiary, and actually spent four years and some months, but don't remember the exact number; don't think it was more than 4½ years. As to what comprised the other nine years, I have not said anything about jail sentences or being locked up for investigation. I served 90 days in jail one time, 60 days another. I could not tell, just don't know how much of the time I have been confined on suspicion or for investigation. They have held me as much as 60 or 30 days then would be let out, and it would not be long before I would be back again."

Anton Proctor testified as to his criminal record: "I have previously been indicted for whiskey and larceny of an automobile; that was at Pinetops in Edgecombe County. I have served 12 months, six months, four months, and 60 days on the roads. I have never served a term in the penitentiary. I have served sentences for public drunkenness, making whiskey, drunk and disorderly, and stealing an automobile; that is all. I first met Fritz Brinkley in jail in Edgecombe County; I am positive of that; I guess that was about five years ago."

The court below gave a full, clear and accurate charge on all essential features of the action, applying the law applicable to the facts, to which no exception or assignment of error was made by the defendant Wells. The court further charged: "Now, gentlemen of the jury, the defendant in this case has not gone upon the witness stand. I charge you, gentlemen, this he did not have to do; he has the right under the laws of the State of North Carolina to sit mute, and rest his defense upon the alleged weakness, as he contends, of the State's case, and the fact that he did not go upon the stand, I charge you as explicitly as I may, should not be used in any way against the defendant in arriving at your verdict in this case."

N. C. Code, *supra,* sec. 1799, is as follows: "In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses or misdemeanors, the person so charged is, at his own request, but not otherwise, a competent witness,

and his failure to make such request shall not create any presumption against him. But every such person examined as a witness shall be subject to cross-examination as other witnesses. Except as above provided, nothing in this section shall render any person who in any criminal proceeding is charged with the commission of a criminal offense, competent or compellable to give evidence against himself, nor render any person compellable to answer any question tending to criminate himself."

As the defendant did not go upon the stand nor offer evidence with respect to his character, his character was not at issue. *S. v. Nance,* 195 N. C., 47. Accordingly he was entitled to the benefit of the statute; this he received in most positive words, as the judge below charged, "I charge you as explicitly as I may" that his failure to go upon the stand "should not be used in any way against the defendant in arriving at your verdict in this case." The matter complained of here is a statement of a series of the State's contentions to the effect that Wells, knowing the bad character of defendants Brinkley and Proctor, had associated with them just prior to the time of the commission of the robbery, and that this tended to support the direct evidence to the effect that Wells was at the filling station at the time of the robbery. Both Brinkley and Proctor testified that Wells was, in fact, at the filling station, assisting them in the robbery. The question here is not one of character but of identity. Was Wells at the filling station? Evidence to the effect that Wells knew the other defendants and was with them immediately prior to the robbery is some evidence, however slight, that he was with them when the robbery was committed and, therefore, tends to corroborate Brinkley and Proctor on this point. The contention of the State was a permissible one under the evidence of this case. If the manner of the statement of the contention was objectionable to the defendant Wells, it was his duty, at the time, to call the court's attention to it and thus permit the court to correct any inadvertent misstatement of the contentions. The defendant is not permitted to wait until the case is made up on appeal to raise objections to the manner of statement of contentions. This has long been the rule in this State. *S. v. Baldwin,* 184 N. C., 791; *S. v. Barnhill,* 186 N. C., 446 (450); *S. v. Sinodis,* 189 N. C., 565 (571); *Braddy v. Pfaff,* 210 N. C., 248 (251); *Sorrells v. Decker,* 212 N. C., 251.

Taking the entire evidence on the record, the charge of the court below as a whole, and the contentions, we can see no prejudicial or reversible error.

No error.