STATE OF NORTH CAROLINA v. ROGER ALLEN CARON

No. 68

(Filed 5 November 1975)

1. Arson § 4— setting fire to paint and body shop — sufficiency of evidence

In a prosecution for setting fire to a building used as a business, in violation of G.S. 14-62, evidence was sufficient to be submitted to the jury where it tended to show that the building burned housed a body and paint shop, substantial evidence showed that the origin of the fire was incendiary or felonious in nature, defendant admitted that he was in the body shop shortly before the fire began, when defendant arrived at the shop after the fire he had soot on his face and clothes but could not explain how the soot got there, and approximately three weeks before the fire defendant increased the amount of the insurance on the shop from $8,000 to $20,000.

**2. Criminal Law § 116— failure of defendant to testify — instructions not required**

Under G.S. 8-54, the trial judge is not required to instruct the jury that a defendant's failure to testify creates no presumption against him unless defendant so requests.

**3. Criminal Law § 116— failure of defendant to testify — instructions not prejudicial**

The trial court's lengthy and unduly repetitious instruction concerning defendant's failure to testify was not prejudicial to defendant since, stripped of unnecessary verbiage, it instructed the jury that a defendant may or may not testify in his own behalf as he sees fit, and that his failure to testify shall not be held against him to any extent.

Chief Justice Sharp dissenting.

Justice EXUM joins in the dissenting opinion.

ON *certiorari* to review the decision of the Court of Appeals, reported in 26 N.C. App. 456, 215 S.E. 2d 878 (1975), which found no error in the trial before *Godwin, S.J.,* at the 18 November 1974 Session, WAKE Superior Court.

Defendant was tried and convicted on a charge of feloniously setting fire to a building used as a business, in violation of G.S. 14-62. The building housed a body and paint shop operated by defendant and was unoccupied at the time of the fire. From judgment imposing an active prison sentence, defendant appealed. The Court of Appeals found no error in the trial. We allowed *certiorari* on 25 August 1975.

Facts necessary to decision are fully set out in the opinion.

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General William F. O'Connell and Associate Attorney Robert R. Reilly, for the State.*

*William A. Smith, Jr., for defendant appellant.*

MOORE, Justice.

[1] Defendant first assigns as error the denial of his motions for judgment as of nonsuit at the close of the State's evidence and at the close of all the evidence. It is elementary that a motion to nonsuit requires the trial court to consider the evidence in its light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. *State v. Goines,* 273 N.C. 509, 160 S.E. 2d

469 (1968), and cases cited therein. Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled. *State v. Cooke,* 278 N.C. 288, 179 S.E. 2d 365 (1971) ; *State v. Goines, supra.*

The evidence for the State tends to show : On 22 January 1974 at approximately 4:00 a.m., the Raleigh Fire Department responded to a fire at Caron Body Shop located at 705 North Person Street. Upon extinguishing the blaze, Raleigh Fire Chief S. J. Talton entered the building and immediately sensed the heavy odor of lacquer thinner. From his examination of the building, he estimated that the fire began forty-five minutes to an hour before his arrival. He termed the blaze a "flash over" fire, that is, a very hot fire that will not burn long because it lacks the necessary oxygen for the amount of fuel in the building.

Further testimony by Chief Talton tends to show the following: The fire started in the northeast corner of the building and flashed across the southwest corner. The second window from the northeast corner of the building had been broken and glass had fallen on the inside of the building. The floor sloped downward from the northeast corner to the southwest corner with a drop of three to four inches from the center of the building to the southwest corner. A fifty-five gallon drum of lacquer thinner was found on a stand in the center of the building, approximately one-third full. The right leg of the stand was broken and marks were on the leg. The drum was on its side with the spout on the face of the drum so situated that it did not touch the floor. The spout was ruptured where it screwed into the barrel and was dented on the left side. There was so much lacquer thinner on the floor that it had to be washed out.

The floor was dirty except for a clean swath about a foot and a half wide where there had been a swirling fire, apparently as a result of burned-off lacquer thinner. This clean trail led from the door back to the drum and from the door over to the window. It circled around the window, went between the cars in the shop and came back to the door. The floor area around the fifty-five gallon drum was also clean.

Chief Talton further testified that "a person would be dead if he stood inside and set the fire. He could not have survived the explosion."

Defendant arrived at the scene approximately thirty minutes after being called at his home and informed of the fire. Chief Talton testified:

" . . . When I saw him, I had reason to believe that the fire had been intentionally set. When Mr. Caron drove up, he was dirty which is natural for a working man, but he was smutty looking and had soot coming out of the corner of his nose and up and around about a half inch over his nose. I noticed smut on his clothes, on his face and hands. He was dressed in work clothes. It was not a clean uniform. I am sure that I saw the smut and not grease or oil."

Officer R. B. Tant took a statement from defendant on the afternoon of 23 January 1974 as part of his normal investigation of the fire. Defendant was not a suspect at this time, but was interviewed because he owned the body shop. Defendant told Tant that on the night of the fire he left the building at approximately 7:10 p.m., naming several persons who were at the building when he left. He added that he had two insurance policies on his business—a $20,000 policy on the contents of the building and a $5,000 policy covering up to five vehicles in the building. Defendant admitted, "I can't explain why there was soot on my face when I got back to the fire."

On the evening of 23 January, defendant called Officer Tant, informed him that his earlier statement was not correct and that he wanted to change it. Thereafter, on 25 January 1975, defendant told Tant that he returned to the body shop after the late movie on television for the purpose of working on a car there but only stayed twenty to thirty minutes, that he left the shop around 2:30 a.m., stopped for a doughnut and coffee, and returned home at approximately 3:00 a.m.

The State's evidence concerning the prior business history of the body shop tends to show that on 9 August 1973 defendant formed a partnership with Charles Edward Caudle and an $8,000 fire insurance policy was placed in the name of both men, doing business as "C and C Body Shop." On 3 January 1974, following some disagreement between Caron and Caudle, the policies were placed back in defendant's name, doing busi-

ness as "Caron Body Shop." At this time the amount of fire insurance was increased from $8,000 to $20,000 without Caudle's knowledge. Caudle's personal boat was in the building at the time of the fire and was destroyed.

Caudle testified that Caron purchased a fifty-five gallon drum of lacquer thinner on the day before the fire. He built a stand for it which Caudle believed needed bracing but the defendant said the drum would not fall. At that time there was another fifty-five gallon drum of lacquer thinner in the building which had approximately thirty gallons left in it after three or four months use.

Defendant offered evidence that his wife had loaned him the money to finance his business. Further evidence for the defendant tended to show that he was habitually dirty because of the nature of his job in the body shop, that a shortage of lacquer thinner existed at the time he bought the fifty-five gallon drum, and that the increase in insurance coverage had been initiated through a recommendation of his accountant. Defendant did not testify.

Taking this evidence in the light most favorable to the State, it was sufficient to take the case to the jury on all elements of the crime charged. The building falls within the definition of the statute. Substantial evidence shows that the origin of the fire was incendiary or felonious in nature. Defendant's own admission as to his presence in the body shop shortly before the fire began, his lack of an explanation for the soot on his face and clothes, and the totality of the circumstances surrounding the fire, inexorably connects defendant with the crime. *See* *State v. Thomas,* 241 N.C. 337, 85 S.E. 2d 300 (1955) ; *State v. Cuthrell,* 233 N.C. 274, 63 S.E. 2d 549 (1951) ; *State v. Anderson,* 228 N.C. 720, 47 S.E. 2d 1 (1948). The motions for nonsuit were properly denied.

[2, 3] Defendant's remaining assignment of error challenges the court's instruction to the jury concerning defendant's failure to testify. The court charged as follows:

" . . . I recall that the defendant, even though he offered evidence, he did not take the stand and testify in his own behalf. Now, I make mention of that fact for this purpose. I have told you that he had no responsibility to offer any evidence, had a right to but no responsibility to; that he owed you no duty to offer any evidence; that the

State had the whole burden and has the whole burden of proof throughout this case. Now that being so, he had an absolute right under the law to try his lawsuit in the fashion that he decided that it ought to be tried. He had a right to offer no evidence. If he offered any, he had a right to remain off the stand. You can't punish any man for exercising a lawful right. So I give emphasis to this fact: The fact that the defendant did not testify does not permit you to speculate about why he did not. I have told you why he did not. He has exercised a lawful right. You may not take the position during your deliberations did he have something he didn't want us to know. He has exercised the lawful right and you may not hold it against him to any extent the fact that he did not testify. You must deal with what you have before you in this evidence and you may not hold against the defendant a'tall the fact that he did not testify."

The question is: Did the court violate G.S. 8-54 in so charging the jury, no request for such charge having been made by defendant? G.S. 8-54 provides, in part:

"In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses or misdemeanors, the person so charged is, at his own request, but not otherwise, a competent witness, and his failure to make such request shall not create any presumption against him. . . . "

Under this statute, the judge is not required to instruct the jury that a defendant's failure to testify creates no presumption against him unless defendant so requests. *State v. Baxter*, 285 N.C. 735, 208 S.E. 2d 696 (1974) ; *State v. Bryant*, 283 N.C. 227, 195 S.E. 2d 509 (1973) ; *State v. Rainey*, 236 N.C. 738, 74 S.E. 2d 39 (1953) ; 3 Strong, N. C. Index 2d, Criminal Law § 116. *See* Annot., 18 A.L.R. 3d 1335, 1337 (1968).

Chief Justice Bobbitt, speaking for the Court in *State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115 (1971), *cert. den.*, 404 U.S. 1023, 30 L.Ed. 2d 673, 92 S.Ct. 699 (1972), said:

"Defendant assigns as error the court's instructions to the effect that defendant's failure to testify was not to be considered against him. Although the instruction is meager and is not commended, we are constrained to hold that it meets minimum requirements. Ordinarily, it would

seem better to give no instruction concerning a defendant's failure to testify unless such an instruction is requested by defendant. [Citation omitted.]"

Our cases do not prescribe any mandatory formula but instead look to see if the spirit of G.S. 8-54 has been complied with. *State v. Sanders,* 288 N.C. 285, 218 S.E. 2d 352 (1975); *State v. Paige,* 272 N.C. 417, 158 S.E. 2d 522 (1968); *State v. McNeill,* 229 N.C. 377, 49 S.E. 2d 733 (1948); *State v. Proctor,* 213 N.C. 221, 195 S.E. 816 (1938).

Justice Lake, speaking for the Court in *State v. Baxter, supra,* stated the general rule that " . . . any instruction thereon is incomplete and prejudicially erroneous unless it makes clear to the jury that the defendant has the right to offer or to refrain from offering evidence as he sees fit and that his failure to testify should not be considered by the jury as basis for any inference adverse to him. . . . "

In this connection we emphasize what we said in *State v. McNeill, supra:*

" . . . [T]he failure of a defendant to go upon the witness stand and testify in his own behalf should not be made the subject of comment, except to inform the jury that a defendant may or may not testify in his own behalf as he may see fit, and his failure to testify 'shall not create any presumption against him.' G.S. 8-54."

In fact, some jurisdictions, contrary to our decisions, hold that unless the defendant so requests, such an instruction tends to accentuate the significance of his silence and thus impinges upon defendant's unfettered right to testify or not to testify at his option. *See* Annot., 18 A.L.R. 3d 1335 (1968); *Griffin v. California,* 380 U.S. 609, 14 L.Ed. 2d 106, 85 S.Ct. 1229 (1965).

We do not commend the instruction given in the present case as it was unduly repetitious. However, we hold that the instruction was not prejudicial. Stripped of unnecessary verbiage, the court instructed the jury that a defendant may or may not testify in his own behalf as he sees fit, and that his failure to testify shall not be held against him to any extent. We think that this instruction meets the requirements of G.S. 8-54. This assignment is overruled.

Defendant having failed to show prejudicial error, the decision of the Court of Appeals is affirmed.

Affirmed.

Chief Justice SHARP dissenting:

In my view the trial judge's instructions to the jury on defendant's failure to testify thwarted the purpose of G.S. 8-54, and entitle defendant to a new trial. The instructions disregard this Court's repeated admonition that "it is better to give *no instruction* concerning failure of defendant to testify unless he requests it." *State v. Bryant,* 283 N.C. 227, 195 S.E. 2d 509 (1973) ; *see, inter alia, State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115 (1971) ; *State v. Jordan,* 216 N.C. 356, 5 S.E. 2d 156 (1939). The instruction also ignored and violated the Court's warning to the trial judges that "the failure of a defendant to go upon the witnesses stand and testify in his own behalf should not be made the subject of comment, except to inform the jury that a defendant may or may not testify in his own behalf as he may see fit, and his failure to testify 'shall not create any presumption against him.' G.S. 8-54." *State v. McNeill,* 229 N.C. 377, 49 S.E. 2d 733 (1948).

The majority concede the challenged instruction was unduly repetitious and not to be commended but hold that its repetitiveness was not prejudicial. This conclusion ignores the fact that certain medicines taken in small doses may effect a cure while a large dose of the same medicine, or a small one indiscriminately repeated, can be fatal. I also believe the majority discounts the effect of the judge's gratuitous instruction that the jury must not speculate why defendant did not take the stand or take the position that because he did not testify he had something to hide. To prohibit this thought was to suggest it. In addition, it would appear that the majority attaches no significance to the manner in which the judge prefaced the instruction, that is, " . . . *I recall* that the defendant, even though he offered no evidence, he did not take the stand and testify in his own behalf." (Emphasis added.)

I believe the judge did defendant a disfavor by emphasizing his failure to testify and that it deepened "an impression which is perhaps hardly ever removed by an instruction which requires a sort of mechanical control of thinking in the face of a strong

natural inference." *State v. Jordan, supra* at 366, 5 S.E. 2d at 161. For the reasons stated I vote for a new trial.

Justice EXUM joins in this dissent.