STATE OF NORTH CAROLINA v. CALVIN CHRISTMAS CUNNINGHAM

No. 232A91-3

(Filed 6 September 1996)

**1. Constitutional Law § 277 (NCI4th)— waiver of right to counsel—misconduct—no loss of right to represent self**

Defendant waived his right to counsel when he adamantly refused to allow the public defender or anyone whose name was

STATE v. CUNNINGHAM

[344 N.C. 341 (1996)]

furnished by the public defender to represent him and stated that he would represent himself unless a specific member of the Michigan bar was appointed to represent him. Further, defendant did not lose the right to represent himself when his own outbursts caused him to be removed from the courtroom several times during the trial.

**Am Jur 2d, Criminal Law §§ 758, 759, 764.**

**Duty to advise accused as to right to assistance of counsel. 3 ALR2d 1003.**

**Accused's right to represent himself in state criminal proceeding—modern state cases. 98 ALR3d 13.**

2. **Constitutional Law § 252 (NCI4th)— deceased officer's personnel file—denial of in camera inspection—absence of prejudice**

In a prosecution for the first-degree murder of a police officer, defendant was not prejudiced by the denial of his motion for an *in camera* inspection of the deceased officer's personnel file and delivery to him of materials pertaining to any actions against the officer involving assaults or the use of excessive force since the conduct of deceased as a police officer would not be relevant to the issue in the case of whether defendant shot the officer as the officer walked around a police vehicle.

**Am Jur 2d, Depositions and Discovery § 440.**

**Right of accused in state courts to inspection or disclosure of evidence in possession of prosecution. 7 ALR3d 8.**

**Validity, construction, and application of statutory provisions relating to public access to police records. 82 ALR3d 19.**

**Accused's right to discovery or inspection of records of prior complaints against, or similar personnel records of, peace officer involved in the case. 86 ALR3d 1170.**

3. **Criminal Law § 252 (NCI4th)— alleged illness of accused— denial of continuances**

The trial court did not err by failing to grant several continuances and a recess requested by defendant during trial on the

ground that he was tired and too ill to continue where defendant was repeatedly examined by medical personnel and no medical basis was found for his complaints.

Am Jur 2d, Continuance § 110.

Continuance of criminal case because of illness of accused. 66 ALR2d 232.

4. Constitutional Law § 350 (NCI4th)— disruptive behavior— excusal of defendant from courtroom—waiver of right to confront witnesses

The trial court did not deny defendant his right to confront witnesses by excusing him from the courtroom where defendant waived his right by refusing to call witnesses and by repeatedly disrupting the court proceedings with unfounded complaints of illness.

Am Jur 2d, Criminal Law §§ 700, 730, 929, 966.

Absence of accused at return of verdict in felony case. 23 ALR2d 456.

5. Constitutional Law § 344.1 (NCI4th)— capital trial— removal of defendant—violation of right to presence— harmless error

The violation of defendant's constitutional right to be present at every stage of his capital trial when he was removed from the courtroom for disruptive behavior was harmless beyond a reasonable doubt where defendant was absent only for short periods of time; during his absences, he was able to observe all the court proceedings through an audio-video hookup in his cell; and when he returned to the courtroom, he was allowed to object to anything that occurred during his absence.

Am Jur 2d, Criminal Law § 692.

Accused's right, under Federal Constitution, to be present at his trial—Supreme Court cases. 25 L. Ed. 2d 931.

6. Criminal Law § 478 (NCI4th)— court's contact with prospective jurors—no error

There was no error in the trial judge's ex parte contact with the jury when selected and prospective jurors were sent from the courtroom and the judge led the prospective jurors to their room because of a shortage of deputies in the courtroom where the

STATE v. CUNNINGHAM

[344 N.C. 341 (1996)]

judge did not speak to any of the prospective jurors during this time.

**Am Jur 2d, Trial §§ 1569, 1573.**

**Prejudicial effect, in civil case, of communications between court officials or attendants and jurors. 41 ALR2d 288.**

**Communication between court officials or attendants and jurors in criminal trial as ground for mistrial or reversal—post-*Parker* cases. 35 ALR4th 890.**

**Postretirement out-of-court communications between jurors and trial judge as grounds for new trial or reversal in criminal case. 43 ALR4th 410.**

7. **Criminal Law § 263 (NCI4th)— denial of continuance to read transcript**

The trial court did not err in the denial of defendant's motion for a continuance of his first-degree murder retrial to read a five-thousand page transcript of his first trial which was delivered to him three days before the retrial since it was not necessary for defendant to read the jury selection, closing arguments and instructions to prepare for a new trial; defendant could have read the transcript when he was not in court during the four days of jury selection; and during the retrial, defendant should have been able to read the previous testimony of each witness for help in dealing with his or her testimony at the new trial.

**Am Jur 2d, Continuance § 107.**

8. **Evidence and Witnesses § 851 (NCI4th)— exclusion of hearsay**

The trial court did not err by excluding defendant's question to a crime scene technician as to whether a report by another showed that some materials were not where the witness reported them to be because the question was designed to elicit hearsay testimony.

**Am Jur 2d, Evidence § 659; Homicide § 329; Witnesses § 813.**

9. **Evidence and Witnesses § 2873 (NCI4th)— item not introduced into evidence—cross-examination not permitted**

The trial court did not err by refusing to permit defendant to ask a witness on cross-examination if he could identify a flash-

light as the one he testified he had observed where the flashlight was not introduced into evidence.

**Am Jur 2d, Witnesses § 813.**

**10. Searches and Seizures § 100 (NCI4th)— search warrant— federal firearms violation—subsequent decisions showing no violation—probable cause for warrant**

A search pursuant to a warrant based upon a statement that defendant was a convicted felon who had a firearm in his home in violation of the federal firearms law was not unlawful, although subsequent federal decisions held that it is not a violation of federal law for a convicted felon in North Carolina to have a firearm in his home, where it was not clear that this was the law when the search was made in 1990, and there was thus probable cause to believe the federal law had been violated.

**Am Jur 2d, Searches and Seizures § 114.**

**11. Evidence and Witnesses § 1767 (NCI4th)— experimental evidence—shot fired through glass—glass admissible to illustrate testimony**

The trial court did not err in the admission of a piece of mounted windowpane glass through which an expert witness had fired a bullet to illustrate his testimony that a bullet had been fired from inside a police car based upon the coning effect the bullet had on the window glass of the car, although the coning was more pronounced in the glass which was introduced than in the police car glass, since this fact did not prevent the glass from illustrating the expert's testimony as to what it showed with respect to the direction of the bullet.

**Am Jur 2d, Evidence §§ 997, 1014, 1016.**

**Admissibility of experimental evidence to show visibility or line of vision. 78 ALR2d 152.**

**12. Evidence and Witnesses § 1249 (NCI4th)— confession— Miranda warnings—use of statement against defendant— absence of "will"**

Defendant's confession was not inadmissible because the interrogating officer warned him that anything he said could be used against him rather than that anything he said could "and will" be used against him.

**Am Jur 2d, Criminal Law § 791; Evidence § 749.**

Comment Note.—Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.

The progeny of *Miranda v Arizona* in the Supreme Court. 46 L. Ed. 2d 903.

**13. Evidence and Witnesses § 1259 (NCI4th)— failure to answer questions—no invocation of right to silence**

Defendant did not invoke his Fifth Amendment right to remain silent by refusing to answer certain questions and by remaining silent after certain questions were asked of him.

**Am Jur 2d, Criminal Law § 796; Evidence § 749.**

**Necessity and sufficiency of statements informing one under investigation for involuntary commitment of right to remain silent. 23 ALR4th 563.**

**14. Evidence and Witnesses § 851 (NCI4th)— exclusion of double hearsay**

In a prosecution for the murder of a police officer, testimony which defendant attempted to elicit from an investigator for the public defender's office that Dwight Johnson told the investigator that a friend of Charlie Bush accused Bush of having "just shot that cop" and Bush did not deny having done so was double hearsay and properly excluded by the trial court.

**Am Jur 2d, Evidence § 661; Homicide § 329.**

**15. Evidence and Witnesses §§ 1980, 2750.1 (NCI4th)— reading search warrant affidavit to jury—door opened by defendant**

Where defendant questioned an officer about the difference between a warrant to search his home and a warrant to procure blood and hair samples and had the officer read a part of the affidavit for the warrant to search the home, defendant opened the door for the State on cross-examination to have the officer read the entire affidavit for the warrant to search defendant's home which revealed that he had previously served a prison sentence for a felony.

**Am Jur 2d, Evidence § 1324.**

STATE v. CUNNINGHAM

[344 N.C. 341 (1996)]

**16. Constitutional Law § 346 (NCI4th)— defendant's refusal to continue presenting evidence—ruling defendant had rested case—no denial of right to present evidence**

The trial court did not deny defendant the right to present evidence in a first-degree murder trial when it ruled that defendant had rested his case after defendant refused to continue presenting evidence where defendant told the court he was too sick and tired to continue; the court had defendant examined by a doctor who reported that he could find nothing wrong with defendant; defendant refused to examine two witnesses during a *voir dire* in the absence of the jury; when the jury returned to the courtroom, the court told defendant that it would hold he had rested his case if he refused to continue with his evidence; and defendant refused to call a witness or offer his exhibits into evidence.

**Am Jur 2d, Criminal Law §§ 720, 730, 956, 966.**

**Federal constitutional right to confront witnesses— Supreme Court cases. 98 L. Ed. 2d 1115.**

**17. Criminal Law § 418 (NCI4th)— jury arguments—court's admonition not prohibition of objections**

The trial court did not prevent defendant from objecting to improper arguments by the prosecutor when it told defendant that it was "not going to let you interrupt the other side" since the court was merely instructing defendant that he could not continue to disrupt the proceedings as he had been doing, and defendant made several objections to the prosecutor's arguments.

**Am Jur 2d, Trial § 705.**

**18. Criminal Law § 463 (NCI4th)— closing argument—crime by defendant—supporting evidence**

The prosecutor's closing argument in a prosecution for first-degree murder of a police officer that defendant had committed the misdemeanor of communicating a threat was supported by evidence that defendant told the officer three times, "Hit me with that flashlight and I'll cut you a flip."

**Am Jur 2d, Trial § 632.**

**Prosecutor's reference in opening statement to matters not provable or which he does not attempt to prove as ground for relief. 16 ALR4th 810.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial**

violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.

**19. Criminal Law § 447 (NCI4th)— closing argument—expectations of murder victim's family—no gross impropriety**

The prosecutor's closing argument in a first-degree murder trial that the victim's mother, father, and widow "are counting on me to present this summation to you so that justice will be done" was not an improper appeal to the sympathy of the jury and was not grossly improper.

**Am Jur 2d, Trial §§ 664-666.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

**20. Criminal Law § 463 (NCI4th)— closing argument—comment supported by evidence**

The prosecutor did not argue facts not in evidence in this prosecution for the first-degree murder of a police officer when he argued that a crime lab chemist measured the density and refractive index of glass fragments taken from the victim's face and from a broken police car window and they were the same; rather, this argument was supported by the chemist's testimony.

**Am Jur 2d, Trial § 632.**

**Supreme Court's views as to what courtroom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

**21. Criminal Law § 809 (NCI4th)— instruction on defendant's failure to testify—absence of prejudice**

Defendant was not prejudiced by the trial court's instruction on defendant's failure to testify without a request by defendant for such an instruction.

**Am Jur 2d, Criminal Law § 940; Trial § 1232.**

**22. Criminal Law § 747 (NCI4th)— instruction—evidence tending to show confession—no expression of opinion**

The trial court did not express an opinion on the evidence by instructing the jury that there was evidence which tended to show that defendant confessed that he committed the crime charged in this case.

**Am Jur 2d, Trial § 1355.**

**23. Homicide § 706 (NCI4th)— failure to submit voluntary manslaughter—error cured by verdict**

Any error in the trial court's failure to submit voluntary manslaughter to the jury was harmless where the trial court submitted first-degree murder based on premeditation and deliberation and second-degree murder, and the jury returned a verdict of guilty of first-degree murder.

**Am Jur 2d, Homicide § 530; Trial § 1427.**

**Automobile liability insurance: what are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicle. 15 ALR4th 10.**

**Propriety of lesser-included-offense charge to jury in federal criminal case—general principles. 100 ALR Fed. 481.**

**24. Arrest and Bail § 101 (NCI4th)— illegal arrest—no right to kill officer**

In a prosecution for first-degree murder for the shooting death of a police officer who had arrested defendant for communicating a threat, the trial court did not err by failing to charge the jury that defendant's arrest was illegal as a matter of law and that he had a right to protect himself by any means, including the means he used, since a person who has been placed under arrest by an officer does not have a right to kill the officer. N.C.G.S. § 15A-401(f).

**Am Jur 2d, Arrest § 115.**

**25. Homicide § 519 (NCI4th)— second-degree murder— instructions—intent to kill—error favorable to defendant**

Any error in the trial court's instruction that required the jury to find an intent to kill rather than an intent to inflict a wound

which caused death in order to convict defendant of second-degree murder was favorable to defendant and not prejudicial.

**Am Jur 2d, Homicide §§ 483, 498.**

**26. Criminal Law § 497 (NCI4th)— evidence sent to jury room—absence of defendant's consent—harmless error**

Assuming it was error for the trial court to permit an unspent bullet, a cartridge casing, and a bullet which had been taken apart in a police laboratory to be sent to the jury room without defendant's consent in a prosecution for first-degree murder, this error could not have affected the outcome of the trial and was harmless in light of the strong evidence of defendant's guilt.

**Am Jur 2d, Trial § 1665.**

**Propriety, at federal criminal trial, of allowing material, object, or model of object allegedly used in criminal act to be taken into jury room during deliberations. 62 ALR Fed. 950.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Jones (Julia V.), J., at the 7 March 1994 Criminal Session of Superior Court, Mecklenburg County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 16 February 1996.

This is the second time this case has been in this Court. In *State v. Cunningham*, 333 N.C. 744, 429 S.E.2d 718 (1993), we granted the defendant a new trial after he had received a death sentence upon his conviction for first-degree murder.

At the second trial of this case, the evidence showed that the defendant shot and killed Charlotte-Mecklenburg Police Officer Terry Lyles on 5 August 1990. The defendant had been arrested by Officer Lyles for communicating threats to Officer Lyles when he and Officer Villines arrived at the defendant's girlfriend's home in response to a domestic disturbance call. At the time of the shooting, the defendant was seated in the back seat of Officer Lyles' patrol car. He first shot the officer twice in the back through the seat. However, the officer was wearing a bullet-proof vest and was not injured. The officer then exited the vehicle. As Officer Lyles went back to the front of the vehicle to call for help, the defendant shot him in the head through the window of the patrol car. Officer Lyles died as a result of this wound. The jury found the defendant guilty of first-degree murder.

The jury could not agree on a sentencing recommendation, and the defendant was sentenced to life in prison. The defendant appealed to this Court.

*Michael F. Easley, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State.*

*Thomas F. Loflin III for defendant-appellant.*

WEBB, Justice.

[1] The defendant first assigns error to the failure of the court to appoint counsel to represent him. He contends he did not unequivocally waive his right to counsel. The record contains two separate forms, signed by the defendant and a superior court judge, which recite that the defendant waived his right to counsel after being fully advised of his rights and fully understanding the consequences of his action as required by N.C.G.S. § 7A-457 and N.C.G.S. § 15A-1242.

The defendant says that the record shows that in spite of these written waivers of counsel, the defendant equivocated as to whether he wanted counsel to represent him. Prior to trial, there were three separate hearings in regard to appointing counsel for the defendant. At each of the hearings, the defendant was adamant that he did not want anyone from the public defender's office or anyone suggested by the public defender's office to represent him. The public defender furnished the defendant with the names of two attorneys who were on the capital list for Mecklenburg County. The defendant would not accept either of these attorneys. The defendant said he wanted Ms. Melissa El, a member of the Michigan bar, to represent him, which the court refused to do. The judge amended the form to say the defendant waived his right to counsel "unless the court appoints Ms. Melissa El."

An indigent defendant does not have the right to an attorney of his choice. When the defendant refused to accept available counsel, the court was not required to appoint counsel of the defendant's choosing. *State v. Weaver,* 306 N.C. 629, 641, 295 S.E.2d 375, 382 (1982), *overruled on other grounds State v. Collins,* 334 N.C. 54, 431 S.E.2d 188 (1993); *State v. Sweezy,* 291 N.C. 366, 371, 230 S.E.2d 524, 528 (1976); *State v. Robinson,* 290 N.C. 56, 65, 224 S.E.2d 174, 179 (1976). When he said he would represent himself if the court would not appoint counsel he requested, the defendant waived his right to counsel.

*State v. Williams*, 334 N.C. 440, 434 S.E.2d 588 (1993), *sentence vacated on other grounds*, 114 U.S. 1365, 128 L. Ed. 2d 42 (1994), upon which the defendant relies, is not helpful to him. In *Williams*, the defendant told the court that he wanted to represent himself, but on further questioning by the court, he said he would let his lawyers continue representing him if they would furnish him with certain information. We held the defendant's request to represent himself was equivocal. In this case, the defendant was adamant that he would not let the public defender or anyone whose name was furnished by the public defender represent him. He took this position after his rights and the consequences of representing himself had been fully explained to him at three separate hearings.

As an alternative argument, the defendant contends his conduct at the trial amounted to a waiver of his right to self-representation. Several times during the trial, outbursts by the defendant caused him to be removed from the courtroom. The defendant, relying on several cases from other jurisdictions, *Brown v. Wainwright*, 665 F.2d 607 (5th Cir. 1982); *United States v. Dougherty*, 473 F.2d 1113 (D.C. Cir. 1972); *State v. Jessup*, 31 Wash. App. 304, 641 P.2d 1185 (1982), argues that the defendant lost his right to represent himself. We know of no such rule in this jurisdiction. If the defendant because of his conduct lost his right of self-representation, he was not prejudiced when the court did not enforce this rule against him. He was allowed to continue representing himself, as he wanted.

This assignment of error is overruled.

[2] In his next assignment of error, the defendant contends the court should have conducted an *in camera* inspection of the personnel file of the deceased. The defendant made a motion for such an inspection, asking the court to deliver to him any materials which would be helpful to his case.

The defendant says complaints or disciplinary actions against the decedent involving assaults, threatened assaults, or the use of excessive force may have provided information to rebut evidence that the deceased did nothing untoward on the day he was killed. The City of Charlotte objected to the release of the decedent's personnel file, and the court did not require that it be released.

The defendant relies on *Pennsylvania v. Ritchie*, 480 U.S. 39, 94 L. Ed. 2d 40 (1987), and *State v. Bailey*, 89 N.C. App. 212, 365 S.E.2d 651 (1988), for the authority to support his position. Assuming the

defendant had a right to this *in camera* inspection, he was not prejudiced by the refusal of the court to allow it. The question in this case is whether the defendant shot Officer Lyles as Officer Lyles was walking around the police vehicle. The conduct of Officer Lyles as a police officer would have no relevance to this question.

This assignment of error is overruled.

[3] Next, the defendant assigns error to the trial court's failure to grant several continuances requested by him during the trial because he was too tired and ill to continue. He also contends that the trial court erred in failing to recess for the day at his request. He notes that the court admonished him and did not allow him to be heard. The defendant further says that the court's actions resulted in denial of his right to confront witnesses and that the court's disparaging treatment of him resulted in prejudice.

The defendant was repeatedly examined by medical personnel, and no medical basis was ever found for his complaints. Yet he continued to interrupt the proceedings and argue to the trial court that he did not feel well. The trial court did not err in refusing to grant continuances or recess since no medical basis could be found for his complaints.

Further, because the defendant was disrupting the proceedings, the trial court properly warned him to behave appropriately, or he would have to leave. When the defendant continued to disrupt the proceedings, the court properly excused him from the room. In fact, at one point, the defendant himself requested that he be allowed to leave the courtroom during the proceedings. The trial court's warnings were appropriate and not prejudicial. We further note that most of the trial court's warnings took place outside of the presence of the jury.

[4] The defendant further argues that by failing to grant his request and by excusing him from the courtroom, the trial court denied him his right to confront witnesses. The privilege of personally confronting witnesses may be lost by consent or misconduct. *Snyder v. Massachusetts*, 291 U.S. 97, 106, 78 L. Ed. 674, 678 (1934). The defendant waived his right by refusing to call witnesses and by repeatedly disrupting the court proceedings with unfounded complaints of illness.

We also conclude that the trial court did not treat the defendant in a disparaging manner. The court merely instructed the defendant that his motions to continue were denied and asked him to resume

with the trial. When the defendant continued to argue with the court, the court removed the jury, heard the defendant, and instructed him that the court had ruled on his motion and that the defendant must follow ordinary court procedure and etiquette, or he would be removed from the room. The trial court did not remove the defendant until, after repeated warnings, he insisted on disrupting the proceedings.

This assignment of error is overruled.

[5] In his next assignment of error, the defendant contends his constitutional right to be present at every stage of the trial was violated when the trial was conducted during his absence, even though the absence was because of his disruptive behavior and on one occasion was voluntary. We held in *State v. Huff*, 325 N.C. 1, 32, 381 S.E.2d 635, 653 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990), that when a defendant in a capital case is removed from the courtroom for disruptive behavior, his constitutional right to be present at every stage of the trial is violated if the trial is continued in his absence. We held that in such a case, a harmless error analysis must be made. The error must be harmless beyond a reasonable doubt to avoid a new trial.

In this case, the defendant was absent for short periods of time. During his absences, he was in his cell and was able to observe all the court proceedings through an audio-video hookup. When he returned, he was allowed to object to anything that occurred during his absence. His exclusion from the courtroom was harmless beyond a reasonable doubt.

[6] The defendant also complains under this assignment of error that the judge had an *ex parte* contact with the jury. At one point in the selection of the jury, the court sent the jurors who had been selected to serve and those who were to be examined from the courtroom. The court directed that the prospective jurors not go to the same room as the jurors who had been selected. There was a shortage of deputies in the courtroom, so the judge led the prospective jurors to their room. The judge did not speak to any of the prospective jurors while she was leading them to their room. In this there was no error.

This assignment of error is overruled.

The defendant next assigns error to the denial of his motion for a mistrial made before the introduction of evidence. He says this motion should have been granted because the judge was biased, the

STATE v. CUNNINGHAM

[344 N.C. 341 (1996)]

judge had an *ex parte* contact with the jurors, the defendant was denied his right to counsel, and the defendant was denied his right to be heard. We have ruled that there was no error in the judge's contact with the jury, the allowance of the defendant to represent himself, and the judge's ruling on his right to be heard. We cannot hold that the judge was biased. Indeed, we believe she exercised patience and restraint in dealing with the defendant's unruly behavior.

This assignment of error is overruled.

[7] The defendant next assigns error to the denial of his motion for a continuance in order to read a five-thousand page transcript of his first trial. The attorney who represented the defendant on his first appeal, and who also represents him on this appeal, did not deliver the transcript to the defendant until three days before the trial. The defendant says he was entitled under the Constitution of the United States to have the transcript of his previous trial, *Britt v. North Carolina*, 404 U.S. 226, 30 L. Ed. 2d 400 (1971), and forcing him to read such a voluminous record in such a short time virtually deprived him of this right.

There was no error in the denial of this motion to continue. The transcript included the jury selection, closing arguments, and jury instructions. It was not necessary to read these to prepare for a new trial. The jury selection took four days, during which time the defendant could be reading the transcript when he was not in court. During the trial, the defendant should have been able to read the previous testimony of each witness for help in dealing with his or her testimony at the new trial.

This assignment of error is overruled.

[8] In his next assignment of error, the defendant argues two errors which he says occurred while he was cross-examining witnesses. Mark Wilson, a crime scene search technician with the Charlotte-Mecklenburg Police Department, testified that he diagrammed the crime scene shortly after Officer Lyles was killed. On cross-examination, the defendant asked Mr. Wilson if a report by another did not show that some materials were not where Mr. Wilson reported them to be. The court sustained an objection to this question.

The question was designed to elicit testimony as to the statement of a third party to prove the truth of the matter asserted. This was hearsay testimony. N.C.G.S. § 8C-1, Rule 801(c) (1992). It was not error to exclude this testimony.

STATE v. CUNNINGHAM

[344 N.C. 341 (1996)]

[9] The defendant's second argument under this assignment of error involves an attempt he made to cross-examine a witness in regard to a flashlight. G.C. Chapman, a police officer with the Charlotte-Mecklenburg Police Department, testified that he went to the scene of the shooting and observed a flashlight on the floor of the police vehicle. On cross-examination, the defendant asked that the flashlight be produced in order to find out if the witness could identify the flashlight. The flashlight had not been introduced into evidence, and the court held the defendant could not question the witness about it. The defendant did not offer the flashlight into evidence, and it was not error that the court did not let him ask the witness to identify it. The court was not obliged to act as defendant's attorney and put the flashlight into evidence. *Faretta v. California*, 422 U.S. 806, 834, 45 L. Ed. 2d 562, 581 (1975).

This assignment of error is overruled.

[10] The defendant next assigns error to the denial of his motion to suppress evidence found in a search of his home. The officers procured a search warrant based on their statement that the defendant was a convicted felon who had a firearm in his home in violation of the federal firearms law. He cites three cases which he says hold that it is not a violation of federal law for a convicted felon in North Carolina to have a firearm in his home. *United States v. Shoemaker*, 2 F.3d 53 (4th Cir. 1993), *cert. denied*, 510 U.S. 1047, 126 L. Ed. 2d 665 (1994); *United States v. McBryde*, 938 F.2d 533 (4th Cir. 1991); *United States v. Essick*, 935 F.2d 28 (4th Cir. 1991).

These three cases deal with the question of when a person is guilty under the federal law of possessing a firearm by a person who has been convicted in any court of a felony. *McBryde* and *Essick* dealt with questions as to when a person could be convicted under the federal law for possessing a firearm after being convicted of a felony in North Carolina if the state conviction does not proscribe the possession of a firearm in this state. In each case, the Court of Appeals for the Fourth Circuit held that the defendant could not be so convicted. The court left open in those cases the question of whether a felon could be convicted under the federal statute if he has a firearm in his home, as he is allowed to under the law of North Carolina. N.C.G.S. § 14-415.1(a) (1993). In *Shoemaker*, the Court of Appeals held that a felon cannot be convicted of a violation of the federal firearms law for having a firearm in his home. The defendant says that because he

could not have been convicted of having a firearm in his home, there was not probable cause to issue a search warrant.

Although we know now that the defendant would not have been guilty under the federal law if he had possessed a firearm in his home, it was far from clear in 1990 when the search was made. It took three decisions by the Court of Appeals to reach this conclusion. When the search was made, there was probable cause to believe the federal law had been violated.

This assignment of error is overruled.

[11] The defendant next assigns error to the admission of a piece of glass mounted on two pieces of wood to illustrate the testimony of a witness. A witness testified as an expert that, in his opinion, a bullet had been fired from inside the patrol car. He based this opinion on the coning effect the bullet had on the window glass of the automobile. He used a piece of windowpane glass through which he had fired a bullet to explain his testimony. He testified that the coning effect would be more pronounced in the glass through which he fired the bullet than it would be in automobile safety glass.

The defendant argues this evidence was irrelevant and inadmissible under N.C.G.S. § 8C-1, Rules 401 and 402 because the coning was more pronounced in the glass that was introduced than it was in the glass in the police car. The glass which was introduced did in fact illustrate how the witness reached his conclusion. The fact that the coning was more pronounced did not prevent it from illustrating the witness' testimony as to what the glass showed in regard to the direction of the bullet.

This assignment of error is overruled.

In his next assignment of error, the defendant argues that it was error not to exclude his confession from evidence. The defendant made a motion to suppress any statement he made to the officers. After a hearing, the court denied the motion. The defendant says the evidence at the *voir dire* shows that the defendant was not properly warned of his constitutional rights and that the evidence showed the officers did not honor his assertion of his right to remain silent.

[12] The defendant says first that the interrogating officer warned him "that anything he said can be used against him," while *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), requires that he be warned that anything he says can and "will" be used against him. We

believe the defendant was adequately warned as to how his statement could be used against him. He knew it would be so used if the State thought it advisable. This satisfies the requirements of *Miranda*.

[13] The defendant next contends he asserted his right not to talk by refusing to answer certain questions and by remaining silent after certain questions were asked of him. The failure of a suspect to answer some of the questions he is asked is not sufficient to invoke his Fifth Amendment right to remain silent. *State v. Westmoreland*, 314 N.C. 442, 334 S.E.2d 223 (1985). The defendant must indicate that he wants all questioning to stop. *State v. Robbins*, 319 N.C. 465, 496, 356 S.E.2d 279, 298, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987).

This assignment of error is overruled.

[14] In the next assignment of error, the defendant's appellate counsel says that he brings a question forward under his duty under *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493 (1967). His counsel says that the defendant wants him to argue to this Court that there was error in excluding proffered testimony. The defendant attempted to elicit testimony from an investigator with the public defender's office to the effect that Dwight Johnson told the investigator that a friend of Charlie Bush accused Charlie Bush of having "just shot that cop," and Charlie Bush did not deny having done so. Dwight Johnson was dead at the time of the trial. This testimony was at least double hearsay and was properly excluded. N.C.G.S. § 8C-1, Rule 802 (1992).

This assignment of error is overruled.

[15] The defendant next assigns error to the court's allowing a detective to read into evidence an affidavit used to obtain a search warrant. The defendant did not object to this, so we must examine this question under the plain error rule. *State v. Black*, 308 N.C. 736, 303 S.E.2d 804 (1983).

The defendant introduced into evidence two search warrants, one procured to search his home and the other to procure blood and hair samples from the defendant. The defendant examined Mr. J.H. Hollingsworth, a Charlotte-Mecklenburg Police Department Homicide Investigator, at length as to the difference between the two warrants, and the defendant had the officer read from the affidavits for the warrants. On cross-examination, Mr. Hollingsworth read the entire affidavit for the warrant to search the defendant's home, which revealed that he had previously served a prison sentence for a felony

conviction. The defendant says it was error to allow into evidence this evidence of bad character when he had not put his character in issue. *State v. Tucker*, 317 N.C. 532, 346 S.E.2d 417 (1986).

The defendant, by questioning Mr. Hollingsworth about the difference in the search warrants and having him read a part of the affidavit to procure the warrant to search his home, opened the door for the State to have the witness read all the affidavit. *See State v. Robinson*, 35 N.C. App. 617, 242 S.E.2d 197 (1978). The reading of the affidavit by Mr. Hollingsworth was not error or plain error.

This assignment of error is overruled.

**[16]** The defendant next assigns error to the action of the court in what he says was "resting" the defendant's case and denying him the right to call witnesses and introduce exhibits into evidence. While the defendant was putting on evidence, he told the court he was too sick and tired to continue. The judge had the defendant examined by a doctor, who reported he could find nothing wrong with the defendant.

The defendant insisted he was not able to continue because he was tired. The court had two of the witnesses under subpoena by the defendant take the stand out of the presence of the jury and asked the defendant to examine them in order to determine whether he would be prejudiced if he examined the witnesses before the jury. The defendant refused to do so. The judge observed that the defendant did not appear to be too tired to function. The judge then had the jury returned to the courtroom and told the defendant that if he refused to continue examining his witnesses and offer his exhibits into evidence, she would hold he had rested his case. The defendant refused to call a witness or offer his exhibits into evidence, and the court ruled he had rested his case.

The court was very patient with the defendant, who was uncooperative. The court was not required to conduct the defendant's case for him. All that is required is that the defendant have a fair chance to present his case. He had such a chance in this case. *McKaskle v. Wiggins*, 465 U.S. 168, 177, 79 L. Ed. 2d 122, 132 (1984).

This assignment of error is overruled.

The defendant next assigns error to the denial of his motion for a mistrial. He argues that a mistrial should have been granted based upon the arguments that he has already set forth: that he was denied the opportunity to be heard, to call witnesses, and to be present at all

STATE v. CUNNINGHAM

[344 N.C. 341 (1996)]

nonrecorded contacts between the judge and jury. We have already found each of these contentions to be without merit. The motion for mistrial was properly denied.

This assignment of error is overruled.

[17] In his next assignment of error, the defendant deals with instructions of the court prior to arguments to the jury. The defendant contends that by instructing him that he could not interrupt the jury argument by the prosecutor, the court prevented him from objecting to improper arguments by the prosecutor. He also cites three instances of what he says were improper arguments by the prosecutor.

Shortly before the jury arguments began, the court stated:

Mr. Cunningham, I am going to Rule according to the Law. I'm going to let you talk. I'm not going to let you interrupt me. I'm not going to let you interrupt the other side. I'm not going to let the other side interrupt you. If you are making an unlawful argument, I will stop you from making it.

The court did not instruct the defendant that he would not be allowed to make appropriate objections. The court was merely instructing the defendant that he could not continue to disrupt the proceedings as he had been doing for the duration of the trial. The defendant made several objections to the jury argument by the prosecutor.

[18] The defendant cites several arguments by the prosecutor in which he contends the court should have intervened *ex mero motu*. First, he complains that the prosecutor improperly argued that the defendant had committed the crime of communicating a threat when he stated to the police officer, "Hit me with that flashlight and I'll cut you a flip." He contends that he did not commit the crime of communicating a threat. All he was attempting to do was to assert his right to defend himself. He further notes that because he was unlawfully arrested, he had the right to resist the arrest; therefore, the prosecution's argument that he also committed the crime of resisting arrest was improper.

The argument that the defendant had committed the misdemeanor of communicating a threat was proper. The elements of communicating a threat are that the defendant threatened a person, that the defendant communicated the threat to that person, that the defendant made the threat in such a manner and under such circumstances that a reasonable person would believe the threat was likely

to be carried out, and that the person threatened believed that the threat was likely to be carried out. N.C.G.S. § 14-277.1 (1993); *State v. Evans*, 40 N.C. App. 730, 253 S.E.2d 590, *appeal dismissed*, 297 N.C. 456, 256 S.E.2d 809 (1979). The defendant made his threat three times. Officer Lyles asked the defendant if he was threatening him, and the defendant repeated his threat. Officer Villines, who was present at the time, testified to these facts. Clearly, the evidence supported the prosecutor's argument, and the circumstances supported arresting the defendant for the misdemeanor of communicating a threat.

[19] The second argument complained of by the defendant is the following:

> Terry Lyles' Mother, Father, his Widow and in a larger sense the people of the State of North Carolina are counting on me to present this summation to you so that justice will be done. As you've seen day after day in this case, Mr. and Mrs. Lyles and Terry Lyles' Widow have sat in this Courtroom and listened to evidence, testimony relating in graphic detail the last few minutes of life of their Son, their Husband and I think, I hope we can all agree that that's a hard thing to do. But they are counting on me. So, I'm going to give it my best.

The defendant contends that this was an improper appeal to the sympathy of the jury. However, the prosecutor further argued that:

> The Defendant said in his speech to you that this is all just a trumped up case, that Ms. Mason and I just want to be, how did he put it, "the baddest DA" or some such thing as that and in answer to that I'll tell you that I'm not a big Lawyer. Any illusions of grandeur I might have had as a Lawyer I left by the roadside a long time ago. But I'm going to give it my best shot.

Taken in its full context and in light of the defendant's argument, the prosecutor's argument was not grossly improper.

[20] The defendant also complains that the prosecutor argued facts not in evidence when he argued:

> You recall Mr. Whitlock, the Chemist from the Crime Lab, who testified that he received from Dr. Sullivan's office the little pieces of glass that Dr. Sullivan had obtained from Officer Lyles' face at Autopsy and he compared that glass with actual glass that Mr. Whitlock took himself from this broken window and he compared them, really, the only two ways that a Chemist could com-

pare them—that is its density, which you can measure and it's [sic] refractive index, which you can measure. And lo and behold, they're identical. They're identical.

The prosecutor made this argument based upon the testimony of Mr. Whitlock. Mr. Whitlock testified that he had measured the density and refractive index of the glass fragments. He further stated:

Both the density and the refractive index of the glass from Terry Lyles was the same as the density and the refractive index from the door.

Clearly, the argument was supported by the evidence.

The prosecution did not make any grossly improper arguments. This assignment of error is overruled.

[21] The defendant next assigns error to the trial court's instructing the jury on the defendant's failure to testify without a request by him to do so. We have previously held that giving the instruction without the defendant's request is not prejudicial error. *See State v. Caron*, 288 N.C. 467, 219 S.E.2d 68 (1975), *cert. denied*, 425 U.S. 971, 48 L. Ed. 2d 794 (1976); *State v. Bryant*, 283 N.C. 227, 195 S.E.2d 509 (1973); *State v. Rankin*, 282 N.C. 572, 193 S.E.2d 740 (1973).

This assignment of error is overruled.

[22] The defendant next assigns error to an instruction to the jury in regard to his confession. He says that by giving this charge, the court expressed an opinion on the evidence. The court charged as follows:

There is evidence which tends to show that the Defendant confessed that he committed the Crime charged in this case. If you find that the Defendant made that confession, then you should consider all the circumstances under which it was made in determining whether it was a truthful confession and the weight you will give to it.

We have approved this charge in *State v. Young*, 324 N.C. 489, 495, 380 S.E.2d 94, 97 (1989).

This assignment of error is overruled.

[23] The defendant next assigns error to the failure of the court to submit voluntary manslaughter to the jury as a possible verdict. The court submitted to the jury first-degree murder based on premeditation and deliberation and second-degree murder, and the jury found

the defendant guilty of first-degree murder. If there is error in the failure to submit voluntary manslaughter to the jury, it is harmless if the court submits first-degree murder based on premeditation and deliberation and second-degree murder, and the jury returns a verdict of guilty of first-degree murder. *State v. Leach*, 340 N.C. 236, 456 S.E.2d 785 (1995); *State v. Bowie*, 340 N.C. 199, 456 S.E.2d 771, *cert. denied,* 116 U.S. 529, 133 L. Ed. 2d 435 (1995); *State v. Shoemaker*, 334 N.C. 252, 271, 432 S.E.2d 314, 324 (1993); *State v. Tidwell*, 323 N.C. 668, 374 S.E.2d 577 (1989).

This assignment of error is overruled.

[24] The defendant next says it was error for the court not to charge the jury that the defendant's arrest was illegal as a matter of law and that he had a right to protect himself by any means, which would include the means he used. The defendant relies on several cases, *State v. Sparrow*, 276 N.C. 499, 173 S.E.2d 897 (1970); *State v. Fletcher*, 268 N.C. 140, 150 S.E.2d 54 (1966); *State v. Polk*, 29 N.C. App. 360, 224 S.E.2d 272 (1976), none of which are applicable. When a person has been placed under arrest by an officer, as happened in this case, the person does not have the right to kill the officer. *See* N.C.G.S. § 15A-401(f) (1988).

This assignment of error is overruled.

[25] In his next assignment of error, the defendant argues the court erred in its instruction to the jury in regard to second-degree murder. The court instructed the jury that "[i]n order for you to find the Defendant Guilty of Second-Degree Murder, the State must prove beyond a reasonable doubt that the Defendant . . . killed the Victim with a deadly weapon thereby proximately causing his death." He contends this confused the intent element of second-degree murder by requiring an intent to kill rather than an intent to inflict a wound which caused the death. *State v. Ray*, 299 N.C. 151, 261 S.E.2d 789 (1980). He says this blurred the distinction between first- and second-degree murder. He contends the jury could have felt that there was no distinction between the two crimes and thus convicted the defendant of first-degree murder because the victim was a police officer.

If there was error in this instruction, it was favorable to the defendant. It required the jury to find more than an intent to inflict an injury that caused death; it required the jury to find an intent to kill.

This assignment of error is overruled.

**[26]** The defendant next argues that it was error to let the jury have certain items of real evidence sent into the jury room. At the request of the jury, the court sent to the jury room an unspent bullet, cartridge casing, and a bullet which had been pulled apart in the police laboratory. The defendant did not object to letting the jury have these items. N.C.G.S. § 15A-1233(b) provides in part:

Upon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence.

Although the defendant did not object to the sending of the exhibits to the jury room, he did not consent to it as required by the statute. Assuming this was error, it was harmless. In light of the strong evidence against the defendant, letting the jury have these items of evidence in the jury room could not have affected the outcome of the trial. *State v. Huffstetler*, 312 N.C. 92, 322 S.E.2d 110 (1984), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985).

This assignment of error is overruled.

The last argument by the defendant consists of a statement by his counsel that pursuant to *Anders*, he informs us that the defendant wants him to argue that the defendant cannot be guilty of murder because it was the physician at the hospital who caused the death by removing the life support system.

This assignment of error is overruled.

NO ERROR.